701 A.2d 156

Kathleen CHEESEMAN and Robert Cheeseman, her husband, Appellants,

v.

LETHAL EXTERMINATOR, INC., and Joseph P. Clare, Appellees.

Sheila J. FORMAN, Executrix of the Estate of Mark Forman, Deceased, and Sheila J. Forman, in her own right,

v.

Morris ROSSMAN, D.O., Andrew C. Friedman, D.O., Regional Internal Medicine Associates, Ltd., Larry Cohen, M.D., Delaware Valley Medical Center, Delaware Valley Radiology, R. Zeit, M.D., and Bensalem Rescue Squad, Inc., Appellees.

Supreme Court of Pennsylvania.

Argued Dec. 11, 1996.

Decided Aug. 22, 1997.

202

Bernard M. Gross, Philadelphia, for Kathleen and Robert Cheeseman.

Robert M. Smolen, Philadelphia, for Lethal Exterminator, Inc., Joseph P. Clare.

Eugene D. McGurk, Jr., Philadelphia, for Sheila J. Forman.

David A. Soltz, Philadelphia, for Larry Cohen, M.D.

Wendy Kaliner Gardia, Norristown, for Delaware Valley Medical Center.

Peter Samson, Philadelphia, for Delaware Valley Radiology, Robert M. Seit.

Earl T. Britt, Plymouth Mtg., for Morris Rossman, Andrew Friedman, Regional Internal Medicine Assoc.

Andrew J. Gallogly, Haddonfield, NJ, for Bensalem Rescue Squad, Inc.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NEWMAN, JJ.

*OPINION OF THE COURT*

CAPPY, Justice:

The question presented in these consolidated appeals is whether the trial court abused its discretion in transferring the instant civil litigation matters from Philadelphia County (Philadelphia) to Bucks County (Bucks), pursuant to Pennsylvania Rule of Civil Procedure (Pa.R.C.P.) 1006(d)(1). For the reasons which follow, we reverse the orders of the Superior Court which affirmed the trial court's transfer of these litigation matters.

In the first appeal before us, appellants Kathleen Cheeseman and her husband Robert Cheeseman (the Cheesemans), who are Bucks residents, commenced a personal injury action in Philadelphia against appellees Lethal Exterminator, Inc. (Lethal Exterminator) and Joseph P. Clare (Clare) in May of 1994. The Cheesemans' complaint alleged that Kathleen Cheeseman was seriously injured when her vehicle collided with a vehicle which was owned by Lethal Exterminator and operated by Lethal Exterminator's agent, Clare, in Bucks.

Appellees Lethal Exterminator and Clare filed a petition to change venue pursuant to Pa.R.C.P. 1006(d)(1) in May of 1995, seeking a transfer of the litigation to Bucks, where Lethal had its principal place of business. The appellees asserted, generally, that litigating in Bucks would be more convenient for the parties and their witnesses for the following reasons: all of the parties and fact witnesses resided in Bucks; all of Kathleen Cheeseman's treating physicians resided in Bucks; and no significant aspect of the case involved Philadelphia. In response, the Cheesemans asserted that Philadelphia was not an inconvenient forum because all of the witnesses lived or worked within a 45-minute drive from Center City Philadelphia.

The learned trial judge appropriately concluded that venue in Philadelphia was proper because one of the joint defen-

dants, Lethal Exterminator, is a corporation which regularly conducts business in Philadelphia, but that the action originally could have been filed in Bucks because the cause of action arose there. See Pa.R.C.P. 1006(a), (b), (c); Pa.R.C.P. 2179. The trial judge considered the private interests of the litigants, i.e., that the residences and locations of the parties and the prospective witnesses were in Bucks, and also considered the court's public interest, i.e., the court's own interest in administration of its cases and the backlog in the Philadelphia courts. The trial judge weighed these considerations against the convenience of the plaintiff's chosen forum. The trial judge reasoned that nothing would make trial in Bucks more expensive or time-consuming for the litigants than trial in Philadelphia. The trial judge heavily weighted the fact that the Cheesemans were not Philadelphia residents and that their case was imposing an extra matter on Philadelphia's already burdened court system, and concluded that the balance of the litigants' private interests and the court's public interest required transfer of the *Cheeseman* action to Bucks.

The trial court, by an order issued July 12, 1995, directed venue transferred to Bucks. The Cheesemans' subsequent petition for reconsideration was denied by an order issued by the trial court on August 24, 1995.

Upon an appeal by the appellants, a panel of the Superior Court affirmed transfer of venue on the basis of the trial judge's opinion, concluding that the trial court reasonably could have concluded that Philadelphia would be an inconvenient, vexatious, and oppressive forum for the defendants.

The second appeal before us involves a medical malpractice action commenced in Philadelphia in December of 1993 by appellant, Sheila J. Forman, Executrix of the Estate of Mark Forman, Deceased, and Sheila J. Forman in her own right (Forman), against a number of persons and entities who allegedly rendered negligent medical treatment and care to Forman's husband. Forman is a resident of Bucks, as was her deceased husband.

Delaware Valley Medical Center, one of the defendants in the *Forman* action, filed a petition seeking transfer of the litigation to Bucks pursuant to Pa.R.C.P. 1006(d)(1), asserting that all of the defendants regularly conducted business in Bucks and that the alleged medical malpractice occurred in Bucks. Delaware Valley Medical Center asserted, generally, "[a]ll of the parties and the vast majority of perspective [sic] trial witnesses and sources of proof are located in Bucks," and that litigating in Bucks would be more accessible and less disruptive to the health care defendants and their witnesses than litigating in Philadelphia. Delaware Valley Medical Center further pointed out that the courts in Philadelphia were congested, and that imposing jury duty service on citizens of Philadelphia for a case having no significant connection to Philadelphia would be unfair.

In her response to Delaware Valley Medical Center's petition, Forman admitted that all of the parties are located in Bucks, but asserted that some of the joint defendants also maintained offices in Philadelphia. Forman alleged that Philadelphia was an equally convenient forum and was convenient for her because she worked in Philadelphia. Moreover, Forman denied that the public interest would be best served by transfer of the litigation to Bucks, arguing that Philadelphia's court congestion, in itself, is an insufficient basis for transferring venue.

The learned trial judge recognized that since some of the joint defendants regularly conduct business in Philadelphia, it was a proper venue, but that the *Forman* action originally could have been filed in Bucks, where the cause of action arose. *See* Pa.R.C.P. 1006(a),(b), and (c); Pa.R.C.P. 2179. As in *Cheeseman*, the trial judge considered the private interests of the litigants, i.e., that the parties and a majority of the prospective witnesses were located in Bucks, and also considered the court's public interest, i.e., the court's own interest in docket management. The trial judge weighed these factors against the convenience of the Plaintiff's chosen forum. The trial judge emphasized that the Philadelphia courts were congested, that the Formans were not Philadelphia residents,

and that the only connection the case had to Philadelphia was some of the defendants conducted business in Philadelphia. The trial judge reasoned that nothing would make trial in Bucks more expensive or time-consuming than trial in Philadelphia, and that the balance of the parties' private interests and the public interest required transfer of venue to Bucks. The trial court, thus, by an order issued July 26, 1994, directed transfer of venue of the *Forman* litigation to Bucks.

Forman filed an appeal with the Superior Court, asserting that the trial court's decision was improper in light of this court's recent decision in *Scola v. AC & S, Inc.*, 540 Pa. 353, 657 A.2d 1234 (1995).

The Superior Court, *en banc*, issued its opinion in *Forman*, divided four to three. The majority of the Superior Court distinguished *Scola*, and affirmed the trial court's transfer of venue based on its prior decisions in *Incollingo v. McCarron*, 416 Pa.Super. 419, 611 A.2d 287 (1992) and *German v. AC & S, Inc.*, 430 Pa.Super. 497, 635 A.2d 159 (1993), *rev'd*, 540 Pa. 353, 657 A.2d 1234 (1995), concluding that these Superior Court cases remained viable precedent despite our decision in *Scola*.[1]

Relying on *German* and *Incollingo*, the Superior Court majority in *Forman* noted that the only connection between the litigation and Philadelphia was that the joint defendants maintained an office in Philadelphia. The *Forman* majority concluded that a balancing of the facts showed that a transfer of venue to Bucks would best serve the private interests of the parties and the Philadelphia courts' public interests. The Superior Court stated that another compelling reason for a transfer of venue to Bucks was that the Philadelphia courts were significantly more congested than the courts in Bucks.

The dissenting Superior Court judges in *Forman* believed that *Scola* was directly applicable and that the majority was improperly revitalizing *German*, which was reversed by *Scola*. The dissenting Superior Court judges in *Forman* could find nothing in the record to meet *Scola*'s requirement that the defendant seeking a transfer of venue show, by detailed

1. *See Forman v. Rossman,* 449 Pa.Super. 34, 672 A.2d 1341 (1996).

information in the record, that trial in the chosen forum would be oppressive or vexatious.

We granted both the Cheesemans' and Forman's petitions for allowance of appeal because of the obvious need for this court to clarify what was meant by our *Scola* opinion, so as to give the lower courts guidance in assessing petitions to transfer venue pursuant to Pa.R.C.P. 1006(d)(1).[2]

■ It is well-established that the trial court's decision on whether to transfer venue is not to be disturbed absent an abuse of its discretion. *See Purcell v. Bryn Mawr Hospital,* 525 Pa. 237, 579 A.2d 1282 (1990). For the reasons which follow, we conclude that the trial court committed an abuse of its discretion, and now reverse the Superior Court's orders in *Cheeseman* and *Forman.*

Rule 1006(d)(1) of the Pennsylvania Rules of Civil Procedure provides:

> For the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought.

Pa.R.C.P. 1006(d)(1).

■ The matters which the petitioner seeking a Rule 1006(d)(1) transfer of venue must show were first addressed in *Okkerse v. Howe,* 521 Pa. 509, 556 A.2d 827 (1989). Unfortunately, in setting forth its decision in *Okkerse,* this court borrowed a discussion of the considerations to be applied by federal courts in deciding whether to dismiss a federal diversity of citizenship action on the ground of forum non conveniens.[3] The *Okkerse* court stated that the plaintiff should not be deprived of his original choice of forum:

**2.** We consolidated the *Cheeseman* and *Forman* appeals for the purpose of oral argument.

**3.** The doctrine of forum non conveniens is that a court may resist imposition upon its jurisdiction, even when jurisdiction is authorized by the letter of a general venue statute, and dismiss the case. *Gulf Oil v. Gilbert,* 330 U.S. 501, 506, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947).

"unless the defendant *clearly adduces* facts that 'either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience ... or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own private and public interest factors' *[but] unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."*

*Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 159 (3d Cir.1980), citing *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) and *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

*Okkerse,* 521 Pa. at 518, 556 A.2d at 832 (emphasis in original).

The above-quoted language in *Okkerse* has caused much difficulty for lower courts in ruling on petitions for transfer of venue pursuant to Rule 1006(d)(1). The lower courts have construed the *Okkerse* language to mean that in order to successfully bring a petition for a transfer of venue, a defendant may elect one of two paths. First, the defendant may show that the balance between the oppressiveness or vexatiousness to the defendant from the plaintiff's choice of forum, and the convenience to the plaintiff from his choice of forum, weighs heavily in the defendant's favor. Second, if the defendant fails to make a showing of oppressiveness or vexatiousness, the defendant may demonstrate that the balance of the court's "private and public interest factors", when weighed against the convenience of plaintiff's chosen forum to the plaintiff, weighs heavily in favor of transfer.

For instance, in *Incollingo, supra,* the Superior Court affirmed the transfer of venue of a wrongful death action from Philadelphia to Delaware County, although recognizing that the defendants therein had not made any demonstration on the record of how trial in the chosen forum would be a hardship to the defendants. In *Incollingo,* the Superior Court ruled that a transfer of venue is appropriate where there is congestion in the chosen forum and the litigation lacks many contacts to the chosen forum. Likewise, in *German,* the Superior Court held that in weighing the public interest

concerns in mass tort litigation, i.e., court congestion in the plaintiffs' chosen forum, and the private interests of the parties in having their case heard more quickly in a forum with a relatively lesser backlog, the scale tips in favor of a transfer.

 Thus, in the lower courts, a policy developed of according court congestion great weight at the expense of the plaintiff losing his chosen forum. Our opinion in *Scola, supra,* was intended to rectify this policy. *Scola* reversed *German* and overruled the Superior Court's decision in *Incollingo.*[4]

*Scola* involved a petition to transfer venue, pursuant to Rule 1006(d)(1), of a number of personal injury asbestos-related actions from Philadelphia to neighboring counties. In *Scola,* we held that the defendants had not met their burden of showing on the record that the plaintiffs' forum choice was oppressive or vexatious to the defendants. We observed in *Scola* that the trial court's analysis therein failed to articulate a basis from which it could be concluded from the record that the defendants had demonstrated that trial in another county would provide easier access to witnesses or other sources of proof. Thus, with the defendants failing to sustain their burden, we ruled in *Scola* that the transfer of venue in these actions was an abuse of the trial court's discretion. While recognizing the desire of the trial court to clear its backlog, we admonished the lower courts in *Scola* that the plaintiffs' choice of forum is entitled to deference.

Subsequent to this court's issuance of *Scola,* the Superior Court issued a panel decision in *Keuther v. Snyder,* 444 Pa.Super. 468, 664 A.2d 168 (1995). In *Keuther,* the Superior Court panel held that the trial court had abused its discretion in ordering a transfer of venue of a negligence action from Philadelphia to Bucks pursuant to Rule 1006(d)(1) where the defendants had not complied with the requirement stated in *Scola* that they make a showing on the record of how litigation in Philadelphia would be oppressive or vexatious to them.

4. To the extent there has been any confusion over the fact that we overruled *Incollingo* by our *Scola* opinion, we explicitly overrule *Incollingo* by the present opinion.

The Superior Court in *Keuther* pointed out that the trial judge, in considering that there was a lack of many connections between the litigation and Philadelphia, that there was a heavy caseload in Philadelphia, and that the plaintiffs were nonresidents of Philadelphia, had not conducted the inquiry required by this court in *Scola.*

The *Keuther* Court correctly interpreted *Scola* as requiring, before any transfer of venue may be granted, that the defendants establish on the record that litigation in Philadelphia would be oppressive or vexatious. The majority of the Superior Court in *Forman,* however, did not so interpret *Scola.*[5]

Unfortunately, our inclusion in *Scola* of the "test" set forth in *Okkerse* was ill-advised. The obvious confusion created in the lower courts regarding the inquiry which a trial court must conduct in ruling on a petition to transfer venue pursuant to Rule 1006(d)(1) requires our consideration, and, therefore, we must revisit this test as applied to the cases *sub judice.*

The lower court's post-*Scola* confusion stems from the *Okkerse* language originating in federal diversity of citizenship cases. The concerns before a federal district court in assessing whether to dismiss an action pending before it on the ground of forum inconveniens are *not* necessarily identical to the concerns a trial court must assess in ruling on a Rule 1006(d)(1) petition asserting forum non conveniens. In a diversity of citizenship case, a court deciding whether to exercise its jurisdiction is faced with considerations such as conflict of laws between the state where the action originated and the state in which the forum chosen by the plaintiff sits. Untangling these choice of law concerns, and other burdens on a federal district court in a diversity matter, are administra-

---

**5.** Thus, as the dissenting judges observed in *Forman,* the majority of the Superior Court is continuing in the erroneous belief that the backlog of litigation matters pending before Philadelphia's courts is a compelling reason for transfer of venue from Philadelphia. This erroneous conclusion on the part of the *Forman* majority leads to a revitalization of *German* and *Incollingo,* which certainly was never the intent of our court in issuing *Scola.*

tive problems for such a court to assess. *See Gilbert, supra; Reyno, supra.*

On the other hand, when dealing with a petition for transfer of venue pursuant to Rule 1006(d)(1), a trial court, given the required deference to the plaintiff's choice of forum, is faced with the question of whether a transfer of venue of an action, appropriately filed with that forum, to another appropriate court in a county of this Commonwealth is necessary for the convenience of parties and witnesses. The convenience to the court is not mentioned in Rule 1006(d)(1) and is not an appropriate consideration for a Rule 1006(d)(1) inquiry. Rule 1006(d)(1) provides that any party to a civil matter may petition for transfer of an action to an appropriate court of any other county where the action originally could have been brought, for the convenience of parties and witnesses.

We recognize that virtually every forum in Pennsylvania is busy and even backlogged, so that, of necessity, the plaintiff's chosen forum will almost always be a busy forum. It is, thus, the usual circumstance, rather than the unusual circumstance, that the chosen forum will be concerned about its own congestion. In fact, congestion in the courts of Pennsylvania, as in most other jurisdictions, is a fact of life which one could easily view as being a given.

 If the trial court located in the forum chosen by the plaintiff is permitted to consider its own backlog, the end result will almost always be the transfer of the litigation matter from the plaintiff's chosen forum, as occurred in the instant matters.[6] Such a result frustrates this court's intent that the plaintiff's choice of forum should rarely be disturbed by the grant of a Rule 1006(d)(1) petition.[7] We cannot over-

---

**6.** The lower courts also apparently have given some weight to the fact that the plaintiffs in the cases *sub judice* were non-residents of the forum they selected. Once again, here the issue of residency is irrelevant. It is agreed in both cases that venue was proper. The issue is whether the choice of forum is oppressive or vexatious to the defendant.

**7.** At least one panel of the Superior Court has recognized the problem inherent in the second prong of the *Okkerse* test allowing a trial court to consider its own congestion in a Rule 1006(d)(1) inquiry, i.e., that Rule

emphasize what we said in *Scola:* a trial court, even if congested, must give deference to the plaintiff's choice of forum in ruling on a petition to transfer venue.

■ Thus, to the extent that this court indicated in *Scola*, on the basis of the *Okkerse* test, that court congestion is an appropriate factor to be considered by a trial court ruling on a petition to transfer venue, this statement was misleading and should be treated as mere *dicta*. The inquiry which this court in effect devised in *Scola* for use in ruling on petitions to transfer venue pursuant to Rule 1006(d)(1) is more appropriate to the considerations to be made under Rule 1006(d)(1) than was the *Okkerse* test. As we ruled in *Scola*, a petition to transfer venue should not be granted unless the defendant meets its burden of demonstrating, with detailed information on the record, that the plaintiff's chosen forum is oppressive or vexatious to the defendant.

■ Thus, under this *Scola* test, the defendant may meet its burden of showing that the plaintiff's choice of forum is vexatious to him by establishing with facts on the record that the plaintiff's choice of forum was designed to harass the defendant, even at some inconvenience to the plaintiff himself. *See, Gilbert, supra.* Alternatively, the defendant may meet his burden by establishing on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute. But, we stress that the defendant must show more than that the chosen forum is merely inconvenient to him.[8]

1006(d)(1) becomes a docket-clearing device. *See Rubin v. Lehman,* 443 Pa.Super. 1, 660 A.2d 636 (1995).

**8.** Under the confusing procedural posture and facts in *Okkerse,* the majority ruled that a remand for an evidentiary hearing was necessary. We stress that, as Mr. Justice Zappala pointed out in his concurring and dissenting opinion in *Okkerse,* since the defendant bears the burden of establishing the need for a transfer by detailed information in his petition, this information should necessarily be adequate for the trial judge to rule upon the petition. Accordingly, there should be no necessity for an evidentiary hearing on the petition. A transfer petition

Claims by the defendant in its petition that no significant aspect of the case involves the chosen forum, and that litigating in another forum would be more convenient, as were made by Lethal and Clare in *Cheeseman,* do not amount to a showing that the chosen forum is oppressive or vexatious. Nor does the assertion in the defendant's petition that the trial court in plaintiff's chosen forum is congested, as was made by Delaware Valley Medical Center in *Forman,* amount to a showing that the chosen forum is oppressive or vexatious *to the defendant.*

Thus, we find that the learned trial court, in both *Cheeseman* and *Forman,* improperly focused its decision on the balance between the convenience of the alternate forum for both of the parties, when weighed against the court's administrative interest in clearing its backlog. The trial court failed to hold the defendants to their proper burdens of establishing, through detailed information in the record, that the plaintiffs' choice of forum is oppressive or vexatious to the defendant. We therefore conclude that the learned trial court committed an abuse of its discretion in ordering a transfer of venue pursuant to Pa.R.C.P. 1006(d)(1) in both of these matters.

The Superior Court's orders in *Cheeseman* and *Forman* affirming the trial courts' transfers of venue in both matters are accordingly reversed and remanded to the trial court for further proceedings in accordance with this opinion.

Jurisdiction is relinquished.

NIGRO, J., did not participate in the consideration or decision of this matter.

NEWMAN, J., files a dissenting opinion in which FLAHERTY, C.J., joins.

should not be a tool by which a defendant may forestall litigation in the underlying case by generating litigation concerning the transfer petition.

NEWMAN, Justice, dissenting.

Today, this Court has again revised the test for change of venue petitions based on *forum non conveniens*. While I agree with this revised test, I believe that Appellees should have the opportunity to meet the test, and therefore, I must respectfully dissent.

In *Okkerse v. Howe*, 521 Pa. 509, 556 A.2d 827 (1989), this Court set forth the test to decide a change of venue petition on grounds of *forum non conveniens*. We stated that the trial court should not deprive a plaintiff of his or her original choice of forum

> "unless the defendant clearly adduces facts that 'either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience ... or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own private and public interest factors' [but] unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

> *Reyno v. Piper Aircraft, Co.,* 630 F.2d 149, 159 (3d Cir. 1980), citing *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) and *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

*Id.* at 518, 556 A.2d at 832. Only two years ago, we reaffirmed this standard in *Scola v. AC & S, Inc.,* 540 Pa. 353, 657 A.2d 1234 (1995). Nonetheless, I agree with the Majority that "[u]nfortunately, our inclusion in *Scola* of the 'test' set forth in *Okkerse* was ill-advised. The obvious confusion created in the lower courts regarding the inquiry which a trial court must conduct in ruling on a petition to transfer venue pursuant to Rule 1006(d)(1) requires our consideration...." Majority op. at 161. As the Majority points out, the second prong of the test, a court's own private and public interest factors, is not an appropriate consideration pursuant to Rule 1006(b)(1).

However, considering that the *Okkerse–Scola* test was "ill-advised" and created "obvious confusion", we can hardly fault the learned trial court for its decisions. In granting Appel-

lees' petitions to transfer venue, the trial court relied primarily on its own private and public interest factors. Because only now have we clearly decided that a court may no longer weigh these factors in its Rule 1006(d)(1) analysis, fairness dictates that we should remand these cases to the trial court so that it may determine if Appellants' choice of forum was oppressive and vexatious, which is the only remaining prong of the newly truncated *Okkerse–Scola* test. The Majority states that Appellees may meet this standard by establishing on the record that trial in the chosen forum is oppressive because "trial in another county would provide easier access to witnesses or other sources of proof...." Majority op. at 162. Appellees have a legitimate prospect of demonstrating this since in each case the parties and a majority of the witnesses and other sources of proof are located in Bucks County.[1] Additionally, this result will not trigger the Majority's concerns regarding burdensome evidentiary hearings or dilatory tactics. *See* Majority op. at 162 n. 8. Only those cases pending on appeal where this issue has been properly preserved would be eligible for relief, and from this date forward the members of the bar will have notice of the proper standard for a change of venue petition pursuant to Pa.R.C.P. 1006(d)(1). Because the Majority is unwilling to grant Appellees the opportunity to satisfy that standard, I must respectfully dissent.

FLAHERTY, C.J., joins the Dissenting Opinion.

---

1. The obvious question here is why have Appellants chosen to pursue their personal injury actions in Philadelphia County when Bucks County clearly appears to be the more convenient forum. Perhaps the perception that Philadelphia juries are more generous than those in Bucks County has influenced Appellants' choice of forum.