Jason WOOD, Sr. and Holly Wood, H/W, Appellants,

v.

E.I. du PONT de NEMOURS AND COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued April 8, 2003.
Filed July 17, 2003.

Eugene D. McGurk, Philadelphia, for appellants.

Raymond M. Ripple, Wilmington, DE, for appellee.

BEFORE: JOHNSON, FORD ELLIOTT, JOYCE, STEVENS, ORIE MELVIN, LALLY–GREEN, BENDER, BOWES, and GRACI, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellants, Jason and Holly Wood, appeal from the order dated May 3, 2001, granting a Petition to Transfer Venue filed by Appellee E.I. du Pont de Nemours & Company ("DuPont"). The order transferred venue from Philadelphia County to Bradford County. We affirm.

¶ 2 The background of the case is as follows. On December 16, 1999, Appellants filed a personal injury action against DuPont in Philadelphia County. Appellants alleged that on January 8, 1998, Jason Wood ("Wood") suffered injuries after he tripped and fell in a hole while making a delivery at DuPont's plant in Towanda, Bradford County. Appellants provided no further details about the nature of the accident.

¶ 3 Appellants are residents of the state of Delaware. DuPont is a Delaware corporation with a registered agent for service of process in Philadelphia and a research facility (unrelated to the Towanda plant) in Philadelphia. Bradford County is located in northeast Pennsylvania, on the New York border.

¶ 4 On February 3, 2000, shortly after the parties filed their pleadings, DuPont filed its first petition to transfer venue to Bradford County. No discovery had taken place at this time. On March 17, 2000, the trial court denied this petition. The parties then engaged in discovery, which closed on February 5, 2001. Trial was expected to commence in July 2001.

¶ 5 On March 5, 2001, DuPont filed a renewed petition for change of venue to Bradford County. In support of this petition, DuPont presented additional evidence that DuPont had not presented in support of its original petition. On April 27, 2001, the trial court heard oral argument on the renewed petition. On May 3, 2001, the trial court granted DuPont's renewed peti-

tion and transferred the action to Bradford County. This appeal followed.[1]

¶ 6 Appellants raise three issues on appeal:

1) Did the trial court err in considering [DuPont's] renewed petition to transfer because it was untimely and there was no new evidence or case law since the filing of defendant's original petition?

2) Did the trial court err in transferring this case from Philadelphia to Bradford County based on all of the circumstances in this matter, including whether [DuPont] offered sufficiently detailed information on the record to satisfy its heavy burden that trial in Philadelphia would be oppressive or vexatious?

3) Did the trial court err in failing to give appropriate consideration to the hardship and prejudice to the plaintiffs, the medical providers and the independent witnesses in transferring this action?

Appellants' Brief at 4.

■ ¶ 7 Our standard of review is as follows. "It is well established that a trial court's decision to transfer venue will not be disturbed absent an abuse of discretion." *Jackson v. Laidlaw Transit, Inc.*, 822 A.2d 56, 57 (Pa.Super.2003). An abuse of discretion takes place when the trial judge overrides or misapplies the law, or exercises judgment in a manifestly unreasonable manner, or renders a decision based on partiality, prejudice, bias, or ill

---

1. An order transferring venue is an interlocutory order, appealable as of right. Pa.R.A.P. 311(c); *Jackson v. Laidlaw Transit, Inc.*, 822 A.2d 56, 57 n. 1 (Pa.Super.2003).

Appellants complied with the trial court's order to file a timely Concise Statement of Matters Complained of on Appeal under Pa. R.A.P. 1925. The trial court issued a Rule 1925 opinion on June 22, 2001.

In an unpublished Memorandum filed on July 1, 2002, a 2–1 panel majority of this Court affirmed the trial court's order. This Court subsequently granted Appellants' petition for *en banc* review and withdrew the panel's decision.

will. *Cooper v. Nationwide Mutual Insurance Company*, 761 A.2d 162, 164 (Pa.Super.2000).

¶ 8 First, Appellants argue that the trial court should not have entertained DuPont's second petition because it was untimely. Pennsylvania Rule of Civil Procedure 1006(d)(1) governs petitions to transfer venue based on forum *non conveniens*. This rule reads as follows:

> For the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought.

Pa.R.C.P. 1006(d)(1).

¶ 9 "Rule 1006(d) imposes no time limit upon a party who seeks to transfer venue[.]" *Vogel v. National Railroad Passenger Corp.*, 370 Pa.Super. 315, 536 A.2d 422, 425 (1988). Indeed, Appellants have cited no case in which a petition to transfer venue was denied based on the timeliness of the petition. We further note that in its most recent and controlling pronouncement of the law in this area, our Supreme Court did not list timeliness as a factor to consider. *Cheeseman v. Lethal Exterminator, Inc.*, 549 Pa. 200, 701 A.2d 156 (1997). The Court did note that "a transfer petition should not be a tool by which a defendant may forestall litigation in the underlying case by generating litigation concerning the transfer petition." *Id.* at 162 n. 8. Appellants have not attempted

to establish that DuPont has used the transfer petition as a delay tactic.

¶ 10 Even assuming *arguendo* that the timeliness of the petition is a relevant factor,[2] Appellants have not demonstrated an abuse of discretion under the facts of this case. In *Borger v. Murphy*, 797 A.2d 309, 313 (Pa.Super.2002), this Court found no abuse of discretion in the trial court's decision to transfer venue three days before trial, based on a petition that had been filed approximately six weeks before trial. In the instant case, the record reflects that DuPont filed its second petition approximately four months before trial was scheduled to begin. The trial court granted DuPont's petition approximately two months before trial was scheduled to begin. Given that this Court found no abuse of discretion in *Borger*, we cannot conclude that the trial court abused its discretion by considering DuPont's renewed petition. Appellants' first claim fails.

¶ 11 Next, Appellants argue that the trial court should not have entertained the second petition because "there was no change in the facts or case law from the time the original petition was filed in March 2000." Appellants' Brief at 13. This argument is based on the premise that a single trial judge must wait for a significant change in the law or the facts before reconsidering his or her own rulings.

¶ 12 This premise is unsound. "A court has the inherent power to reconsider

---

**2.** *See, Turner v. Kohl*, 420 Pa.Super. 507, 617 A.2d 20, 22 (1992) (Kelly, J., concurring) (timeliness of the petition should be a relevant factor in considering the propriety of granting a petition to change venue), *citing, Wills v. Kaschak*, 420 Pa.Super. 540, 617 A.2d 37, 42 (1992) (Kelly, J., dissenting) (same); *McCrory v. Abraham*, 441 Pa.Super. 258, 657 A.2d 499, 501 n. 1 (1995) (unexplained, unfair, three-year delay in filing a forum *non conveniens*

petition would not be "factored against" the petitioner, where no action had been taken in the trial court during that three years), *appeal denied*, 544 Pa. 652, 676 A.2d 1194 (1996). Assuming *arguendo* that timeliness is a relevant factor, it would not appear to be a controlling factor. The timeliness of the petition, standing alone, bears little relationship to the substantive issues of oppressiveness/vexatiousness forming the core of the dispute.

its own rulings." *Joseph F. Cappelli & Sons, Inc. v. Keystone Custom Homes, Inc.,* 815 A.2d 643, 648 (Pa.Super.2003); *see also, Commonwealth v. Demby,* 496 Pa. 509, 437 A.2d 1156, 1158 (1981) (same); *Atlantic Richfield Co. v. J.J. White, Inc.,* 302 Pa.Super. 276, 448 A.2d 634, 636 (1982).

¶ 13 We further note that Appellants' citation to *Turner v. Kohl,* 420 Pa.Super. 507, 617 A.2d 20, 22 (1992), is inapposite. *Turner* considered the problem of "judge shopping": *i.e.,* presenting the same petition to different judges until one could be found who would grant the petition. *Turner,* 617 A.2d at 21. In order to prevent judge-shopping, the *Turner* Court stated: "[u]nless circumstances have changed, therefore, a second petition for change of venue under Pa.R.C.P. 1006(d) should not be presented after a first petition has been considered and denied." *Id.* Thus, *Turner* represents a straightforward application of the coordinate jurisdiction rule. As our Supreme Court recently explained, "the coordinate jurisdiction rule prohibits a judge from overruling the decision of **another judge of the same court,** under most circumstances." *Ryan v. Berman,* 572 Pa. 156, 813 A.2d 792, 794 (2002) (emphasis added).

¶ 14 The instant case is distinguishable from *Turner* and from other cases applying the coordinate jurisdiction rule. In the instant case, a single trial judge reconsidered his **own** ruling on transferring venue. Thus, this case is governed by the general rule that a single trial judge has the inherent power to reconsider his or her own rulings. *Cappelli, supra.* Finally, Appellants have failed to cite any circumstances in the instant case which would bar application of this general rule. Appellants' second claim fails.[3]

¶ 15 Next, Appellants argue that the trial court abused its discretion by granting the petition, because DuPont failed to meet its burden of demonstrating that Philadelphia County is an oppressive or vexatious forum.

¶ 16 The seminal case regarding transfers based on forum *non conveniens* is *Cheeseman, supra.* Our Supreme Court reasoned as follows. First, "a trial court, even if congested, must give deference to the plaintiff's choice of forum[.]" *Cheeseman,* 701 A.2d at 162. The plaintiff's choice of forum should "rarely be disturbed" by the grant of a petition under Rule 1006(d)(1). *Id.* Next, "a petition to transfer venue should not be granted un-

---

3. Assuming that significant additional facts were required, we would conclude that this test was met. DuPont filed its first petition less than two months after Appellants filed their complaint, and before any discovery had been conducted. At the time, DuPont knew very little about the nature of the accident, aside from the fact that Wood allegedly fell somewhere on the premises of the Towanda plant. After taking discovery, DuPont learned that: (1) Wood fell in the shipping/receiving area of the plant; and (2) the hole in which he fell no longer existed. During discovery, DuPont developed evidence that the particular area in question had been paved **before** Wood fell. Thus, according to DuPont, the actions or inactions of the paving company became a relevant factor. At that point, Du-

Pont could specifically identify not only the responsible parties at the paving company, but also the relevant employees and managers at the Towanda plant. Moreover, as noted further *infra,* the additional discovery highlighted the need for a site visit to the plant.

We also note that adopting the rule urged by Appellants would unfairly penalize parties who seek to file a transfer petition relatively early in the litigation. Such a choice to file an early petition is understandable, given the very nature of the underlying claim: namely, that the chosen forum is oppressive and vexatious to the petitioner. Of course, petitioners who file **too** early run the risk of having their initial petition denied for failure to present detailed information on the record.

less the defendant meets its burden of demonstrating, with detailed information on the record, that the plaintiff's chosen forum is oppressive or vexatious to the defendant." *Id.* The defendant may meet this burden in one of two ways: (1) by showing "with facts on the record that the plaintiff's choice of forum was designed to harass the defendant, even at some convenience to the plaintiff himself"; or (2) by showing "on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute." *Id.*

¶ 17 The *Cheeseman* Court stressed that "the defendant must show more than the chosen forum is merely inconvenient to him." *Id.* A mere showing "that no significant aspect of the case involves the chosen forum, and that litigating in another forum would be more convenient," is insufficient. *Id.* Finally, the trial court's own congestion or backlog is not a relevant factor. *Id.*

■ ¶ 18 We now turn to the trial court's determination that transfer was appropriate. Initially, we note that the trial court invoked the proper legal standards for transfer based on forum *non conveniens.* Trial Court Opinion, 6/22/2001, at 2–3. The trial court then reasoned as follows:

> In the present case, [Appellants] chose to bring suit in Philadelphia County; however, this action could have been brought in Bradford County, where the cause of action arose. Therefore, an alternative forum was, and is still, available to [Appellants].

> The hotly disputed issue in this case is whether a hole existed at [DuPont's] plant on the day of [Wood's] fall. [DuPont] will attempt to prove that such a hole never existed prior to, or at the time of, [Wood's] alleged fall in the shipping lot on January 8, 1998. As a result, [DuPont] plans to call expert witness, Malcolm Lim, who conducted a ground-penetrating radar test of the pavement.

> [DuPont] has also shown with detailed information on the record they plan to call the following plant employees: John Flanagan, to testify there were no problems with the 1997 paving job, and that the shipping area has not been repaved since 1997; John Keegan, to testify that no construction permits have been issued for repaving or any other type of repair since the alleged accident; George Watson, to testify that no such work has been done in the relevant area since the time of the alleged accident; Mike Walsh, to show there were no drains or similar holes in the relevant area that had been removed or covered since the alleged accident; Edwin Robertson, to explain the purpose of monitoring wells in the shipping yard and testify that none existed at the time of the alleged accident; Vance Seely, to testify that none of the bimonthly safety audits performed in the shipping area around the time of the alleged accident mention the existence of any hole in the lot; [and] Walter Beebe, to testify that none of the truck drivers who performed their duties in the shipping area lot ever complained about the alleged hole. These specified witnesses, essential to [DuPont's] case, are located about 190 miles from Philadelphia County. However, if the trial were to be held in Bradford County, these witnesses would be less than 2 miles away from the Bradford County Courthouse.

> [DuPont] plans to call employees of the IA Construction Corporation who performed the paving job at the shipping site within Dupont's Towanda

plant, prior to the alleged accident. Du-pont is prepared to call three of IA Construction foremen. that worked on the job to testify that IA Construction left no holes unpaved in the relevant area. DuPont also plans to call IA Construction President, Terry Brofee, to authenticate documents that establish the paving job was completely finished by October 3, 1997, and to testify that no one from IA Construction ever returned to Dupont's Towanda plant after that date to remedy any problems with the job. IA Construction is located in Muncy, Pennsylvania within Lycoming County, a neighboring county of Bradford County. As a result, the witnesses from IA Construction would be required to travel over 173 miles if this case were to be tried in Philadelphia County. Since DuPont has specified their key witnesses and also their potential testimony regarding the condition of the pavement and the alleged hole after the first denial for change of venue, it is now clearly shown on the record that Bradford County would provide easier access to these witnesses.

. . .

[DuPont] has established, pursuant to Pa.R.C.P. 206, it is necessary for the jury to view the pavement where the alleged fall took place in order to determine if a hole existed, was repaired or paved over at any time prior to, or after the alleged accident. The defense intends to show the alleged location of the hole had been paved just months prior to the accident and that such a hole never existed on the day of [Wood's] accident. [DuPont] maintains that this determination can, and should, be made by the jury to determine negligence, the basis of this suit. Compared to the *Johns* case[4], busing the present jury

190 miles, from Philadelphia County to Bradford County, to view the accident scene would place an unnecessary burden on the jury and unneeded cost on the court. Therefore, under *Cheeseman*, Bradford County would provide easier access to conduct a view of [the] premises involved in the dispute.

Trial Court Opinion, 6/22/01, at 3–6 (citations omitted).

¶ 19 The trial court concluded that:

A trial in Bradford County would better serve the interests of justice since it provides easier access to witnesses and also an ability for the jury to view the characteristics of the shipping lot pavement, where the alleged fall took place. Allowing this trial to proceed in Philadelphia County would be not only oppressive to [DuPont], but the monetary expenses possibly incurred, either for travel and/or lodging and meals to Philadelphia County, as compared to Bradford County, do not justify the trial of this case in Philadelphia County.

*Id.* at 6–7.

¶ 20 We see no abuse of discretion. DuPont placed detailed information on the record establishing that many of its critical witnesses were plant employees who would be forced to travel over 190 miles to attend trial in Philadelphia. Other critical defense witnesses include employees and/or officers of the paving company that was responsible for paving the relevant area after the accident. Trial in Bradford County would provide far greater access to these witnesses, who would otherwise have to travel over 170 miles to attend trial in Philadelphia County. Moreover, the instant case was particularly appropriate for a jury view, in light of factual disputes surrounding the condition of the pavement on the date in question. Further, we see

4. *Johns v. First Union Corp.,* 777 A.2d 489 (Pa.Super.2001).

no abuse of discretion in the trial court's determination that these factors establish oppressiveness and vexatiousness, and not merely inconvenience. *See, Borger,* 797 A.2d at 313.

¶ 21 Appellants' arguments to the contrary are unavailing. First, Appellants argue that DuPont failed to meet its burden because it did not present any **affidavits** from its proposed witnesses detailing the hardship they would suffer by traveling to Philadelphia. It is true that DuPont presented only one affidavit, and it is unclear whether the trial court considered it.[5] On the other hand, *Cheeseman* and Rule 1006(d) do not require any particular form of proof. All that is required is that the moving party present a sufficient factual basis for the petition. *Cheeseman,* 701 A.2d at 162. The trial court retains the discretion to determine whether the particular form of proof presented in support of the petition is sufficient.[6] This claim fails.

¶ 22 Second, Appellants argue that a viewing of the premises is unwarranted because the condition of the premises has changed from the time of the accident to the present day. In his deposition, Wood stated that on January 8, 1998, he fell in a hole in the pavement of the Towanda plant's shipping and receiving area. Wood further testified that when he revisited the facility on August 24, 2000, the hole no longer existed. Wood Deposition, 9/25/2000, at 55, 60–61. In other words, Appellants' position is that the hole was covered up after the accident. DuPont has taken the position that the shipping area was paved in 1997, **before** Wood's fall. Thus, it is not entirely clear that the condition of the premises has changed.

¶ 23 In any event, the trial court holds the discretion to order a jury view.

5. At oral argument on the renewed petition, DuPont presented an affidavit from James Sanders, the plant manager at the Bradford County facility. The affidavit indicated that the Towanda plant is staffed on a "one job-one person" basis, with no back-up employees. Additionally, several of the necessary witnesses work the same shift in the same area. The affidavit stated that the ability to ship products would be affected and production and safety at the plant would be jeopardized if the witnesses were to testify at trial in Philadelphia. *See,* April 26, 2001 Affidavit of James Sanders. Appellants objected that the affidavit was untimely and conclusory. Appellants also argued that they did not have an opportunity to depose Mr. Sanders regarding the contents of the affidavit. The trial court's opinion in support of the transfer order does not make reference to the Sanders affidavit. Accordingly, we will presume that the court did not consider the Sanders affidavit.

6. Appellants cite a number of cases for the proposition that affidavits from the affected witnesses are required. Appellants' Brief at 17–18, *citing Cooper v. Nationwide Mut. Ins. Co.,* 761 A.2d 162 (Pa.Super.2000); *Hoose v. Jefferson Home Health Care,* 754 A.2d 1 (Pa.Super.2000), *appeal denied,* 564 Pa. 734, 766 A.2d 1249 (2001); and *Johnson v. Henkels & McCoy, Inc.,* 707 A.2d 237, 240 (Pa.Super.1997). In our view, none of these cases sets forth an "affidavit requirement." The outcome of these cases ultimately turned on the merits of the petition, rather than the specific presence or absence of affidavits. *See, Cooper,* 761 A.2d at 165–166 (trial court abused its discretion in granting insurer's petition to transfer case from Philadelphia County to Pike County because insurer demonstrated mere inconvenience rather than oppressiveness); *Hoose,* 754 A.2d at 4–5 (trial court abused its discretion by granting insurer's petition to transfer venue from Philadelphia county to Delaware County, when petitioner's proof did not rise above mere inconvenience and where petitioner had previously removed the case to the Federal District Court for the Eastern District of Pennsylvania, in Philadelphia); and *Johnson,* 707 A.2d at 239–240 (trial court abused its discretion by applying an outmoded legal standard and by granting the petition based on a mere allegation of inconvenience, rather than proof of oppressiveness/vexatiousness).

Pa.R.C.P. 219; *Lobozzo v. Adam Eidemiller, Inc.*, 437 Pa. 360, 263 A.2d 432, 435 (1970). In the instant case, the trial court found that a jury view would be necessary to resolve the instant dispute. Of course, we recognize that the Philadelphia County trial judge would not order the jury view; rather, any such view would be ordered by the Bradford County judge who will be assigned to this case after the appellate process is complete. Nevertheless, given the particular facts of this case, we see no abuse of discretion in the trial court's determination that the instant case is appropriate for a jury view. It follows that the court did not abuse its discretion in finding that a Bradford County jury would be in a far better position to view the premises than would a Philadelphia jury. As noted above, the Bradford County Courthouse is only two miles from the accident, while the Philadelphia County courthouse is approximately 190 miles away. *Compare, Johns*, 777 A.2d at 491–492 (rejecting petitioner's unsubstantiated claim that a view of the Bucks County property where plaintiff bicyclist fell would be necessary, and reversing transfer from Philadelphia County to Bucks County).

¶ 24 Finally, Appellants argue that the trial court abused its discretion by failing to grant the proper deference to Appellants' chosen forum. Specifically, Appellants argue that the court failed to consider that Wood is permanently disabled, and that travel to Bradford County would be more inconvenient than travel to Philadelphia County. Appellants also note that Wood's treating medical witnesses and several independent fact witnesses reside in the Philadelphia vicinity.[7] Appellants further argue that the court must expressly compare the convenience of their chosen forum with the hardship suffered by the defendants.

¶ 25 We disagree that an explicit balancing analysis is required. It is true that under *Cheeseman*, the plaintiff's choice of forum is entitled to great weight. *Cheeseman*, 701 A.2d at 162. Indeed, the *Cheeseman* standard presupposes that the plaintiff's chosen forum is more convenient. Presumably, the plaintiff would not have chosen the forum if it were not convenient for the plaintiff and/or his witnesses. The *Cheeseman* standard itself vests great weight in the plaintiff's initial choice of forum by: (1) placing the burden of proof on the defendant; (2) requiring the defendant to present detailed facts on the record; and (3) requiring the defendant to demonstrate oppression and vexatiousness, not mere inconvenience. In other words, the plaintiff's choice of forum will prevail even if it is inconvenient to the defendants. The defendant will be able to transfer the case only if it carries its heavy burden of proof that the forum is oppressive to him.[8] Because the *Cheeseman* standard already tips the scales heavily in the plaintiff's favor, the court need not expressly weigh the relative convenience of the forum to both sides. Rather, the proper focus of the inquiry "is whether the choice of forum is oppressive or vexatious to the defendant." *Cheeseman*, 701 A.2d at 162 n. 6

---

7. DuPont has offered to waive any challenge to Wood's medical expenses, current medical condition, and future earning capacity if the case is transferred to Bradford County. Presumably, this offer would render moot the testimony of many (if not all) of Wood's treating physicians. Appellants respond that this offer is a disingenuous tactic to help bolster its transfer petition. We need not consider these matters.

8. Our courts have not hesitated to find an abuse of discretion if the defendant established mere inconvenience, rather than oppressiveness. *See, e.g., Johns*, 777 A.2d at 492; *Cooper*, 761 A.2d at 166; *Hoose*, 754 A.2d at 5.

(emphasis added).[9]  As noted above, the trial court did not abuse its discretion in so concluding.  Appellants' final claim fails.

¶ 26 Order affirmed.

**9.**  We note that in many cases, the location and convenience of the plaintiff's witnesses will be immaterial to the central question of whether the forum is oppressive to the defendant.