**AmeriServ Financial v. Mellon Bank, N.A.**

C.P. of Cambria County, no. 2003-1098.

*David Novak,* for plaintiff.
*Sharon L. Rusnak,* for defendant.
*William Pietragallo II,* for third-party defendants.

SWOPE JR., *J.,* October 24, 2003—This case is before the court on the defendant Mellon Bank's petition to transfer venue pursuant to the doctrine of forum non conveniens. Counsel for Mellon Bank has also filed this petition on behalf of the third-party defendants (Mr. and Mrs. Williams). A hearing on this matter was held on October 1, 2003, at which time the court considered arguments of counsel and testimony. At the conclusion of the hearing, the court gave the respective parties 20 days to submit briefs on the issue. Subsequently, both parties have submitted briefs.

## FACTUAL SUMMARY

The plaintiff is a bank with its main officers located in Johnstown, Cambria County, Pennsylvania. On or about November 28, 2000, the plaintiff, then known as US Bank, made a loan of $2,800,000 to a number of corporations (primarily restaurants), which were owned by the third-party defendants who reside in Pittsburgh, Alle-

gheny County, Pennsylvania. Pursuant to the terms and conditions of the loan, the third-party defendants executed a limited recourse guaranty in the amount of $723,988, as well as a limited non-recourse guaranty which was secured, in part, by a pledge of securities held in a trust, at the defendant Mellon Bank, a national banking association located in Pittsburgh. The guaranties provided that the third-party defendants would not, without written consent of the plaintiff, sell, contract to sell, lease, encumber, transfer, or dispose of the funds in the trust. The said trust was set up between the defendant and the third-party defendants in 1987 in Pittsburgh, and permitted the defendant to distribute to the third-party defendants as much of the trust property as the third-party defendants requested.

At some time after receiving the loan from the plaintiff, the third-party defendants defaulted, causing the plaintiff to institute a suit against them on the limited recourse guaranty. The said action was filed in the Cambria Court of Common Pleas at no. 2002-4225, on December 24, 2002.

At various times during the year 2001, the third-party defendants instructed the defendant to liquidate the assets of the trust account. From April 18, 2001 through June 12, 2001, the defendant paid to the third-party defendants from the trust, the following amounts: $312,124.26, $38,000, $112,900.48, and $125,556.48, all totaling $588,581.22. The said amounts were distributed to various bank accounts maintained by the third-party defendants, or by companies controlled by the third-party defendants. In order to facilitate the revocation of

the trust account and the third parties' requested liquidation and distribution of the trust account, the third-party defendants executed and provided to the defendant, an approval, release, and indemnification agreement dated June 19, 2001, which released and discharged the defendant from all claims and liabilities from the trust, and held the third-party defendants liable for any distributions made by mistake. The defendant eventually closed the said trust.

The plaintiff contends that the defendant made the distributions, without obtaining its consent, due to its duly perfected security interest in the said trust. Upon learning of the distribution of the trust account without its consent, the plaintiff notified the defendant of the unauthorized distributions by correspondence dated November 15, 2001. In a follow-up correspondence, the plaintiff demanded on June 18, 2002, that the defendant remit to the plaintiff all of the funds that it distributed to the third-party defendants.

The third-party defendants, despite requests, refused to indemnify the defendant for the improper distribution of funds. As a result, on or about July 26, 2002, the defendant, contending that the third-party defendants violated the release, brought an action in the Court of Common Pleas of Allegheny County (GD 02-14202) against the third-party defendants in order to recover the funds distributed to them. The third-party defendants filed preliminary objections to the defendant's complaint, contending among other things that the defendant could not bring a suit against them until the defendant paid over the said funds to the plaintiff. The plaintiff contends that

counsel for both parties agreed not to continue with the preliminary objections until the plaintiff brought an action against the defendant to recover the funds.

As a result, on April 14, 2003, the plaintiff filed a complaint with this court against the defendant seeking to recover the funds it distributed to the third-party defendants. On May 14, 2003, the defendant joined the third-party defendants by complaint, which the third-party defendants responded by filing an answer with this court.

On or about July 30, 2003, the defendant filed a petition to transfer venue pursuant to the doctrine of forum non conveniens, asking that this court transfer the matter to Allegheny County. The petition was also filed on behalf of the third-party defendants. The plaintiff filed a response to the petition, denying all material facts, and asserting that venue is proper in Cambria County.

In its petition, the defendant asserts a number of reasons why venue, under the doctrine of forum non conveniens, would be proper in Allegheny County. Specifically, the defendant contends that this action, and the action that it filed against the third-party defendants involve the same claims and issues and should be consolidated. In addition, the defendant asserts that the situs and administration of the trust, the release of the trust's funds to the third-party defendants, the defendant's and the third-party defendants' location, along with their counsel, all are in Allegheny County. Furthermore, the defendant contends that it would be a hardship for the majority of witnesses who live in Allegheny County to testify in Cambria County, and also argues that it would

be a hardship to the third-party defendants to defend this matter in Cambria County because, pursuant to the release of the trust's funds, they are liable for the defendant's legal fees. Finally, the defendant contends that the plaintiff chose to do business with a party who resided in Allegheny County, and also chose to take a security interest in trust proceeds held by the defendant in Allegheny County.

The plaintiff has vehemently denied the defendant's petition relying on the case of *Cheeseman v. Lethal Exterminator Inc.,* 546 Pa. 200, 701 A.2d 156 (1997),[1] which is the seminal case regarding the doctrine of forum non conveniens. Specifically, the plaintiff contends that the defendant has failed to specifically allege that its choice of forum is oppressive and/or vexatious. The plaintiff contends that the defendant has made general allegations on behalf of itself and the third-party defendants that the forum is inconvenient, but has not provided on the record any evidence to support its allegations, including the identities of key witnesses to be called and a general statement of their testimonies. The plaintiff also notes that it has filed two separate matters against the third-party defendants in Cambria County, so, therefore, it would be inconvenient to it to transfer the present matter to Allegheny County. Finally, the plaintiff contends that the defendant has failed to allege that the present action could have originated in Allegheny County, and, as such, venue is proper in Cambria County.

---

1. The defendant also relies on *Cheeseman v. Lethal Exterminator Inc.,* 546 Pa. 200, 701 A.2d 156 (1997).

## DISCUSSION

Pennsylvania Rule of Civil Procedure 1006(d)(1) provides:

"For the convenience of parties and witnesses, the court upon petition of any party may transfer an action to the appropriate court of any county where the action could have been brought." Pa.R.C.P. 1006(d)(1).

A trial court's ruling on venue will not be disturbed if the decision is reasonable in light of the facts. *Mathues v. Tim-Bar Corporation,* 438 Pa. Super. 231, 234, 652 A.2d 349, 351 (1994). A decision to transfer venue will not be reversed unless the trial court abused its discretion. *Id.* A plaintiff's choice of forum is given great weight, and the burden is on the party challenging that choice to show it is improper. *Masel v. Glassman,* 456 Pa. Super. 41, 45, 689 A.2d 314, 316 (1997).

Literally translated, the Latin phrase forum non conveniens means "inconvenient forum." *Shala v. Ryan,* 53 D.&C.4th 129, 141 (2001). A petition to transfer venue on the grounds of forum non conveniens should not be granted unless the defendant meets its burden of demonstrating with detailed information on the record that the plaintiff's chosen forum is oppressive or vexatious to him. *Borger v. Murphy,* 797 A.2d 309, 312, (Pa. Super. 2002).

The seminal case on the doctrine of forum non conveniens is *Cheeseman v. Lethal Exterminator Inc.,* 549 Pa. 200, 701 A.2d 156 (1997). The *Cheeseman* decision clarified conflicting law at the time regarding a trial court's power and test to transfer a case to another venue. In the

process, the *Cheeseman* decision, "set a stringent standard which parties seeking transfer of venue on the basis of forum non conveniens must meet." *Shala v. Ryan,* 53 D.&C.4th 129, 136 (2001).

In *Cheeseman,* Chief Justice Cappy held: "[t]he defendant may meet its burden of showing that the plaintiff's choice of forum is vexatious to him by establishing with facts on the record that the plaintiff's choice of forum was designed to harass the defendant, even at some inconvenience to the plaintiff himself. [citation omitted] Alternatively, the defendant may meet his burden by establishing on the record that trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute. But, we stress *that the defendant must show more than that the chosen forum is merely inconvenient to him.*" *Cheeseman v. Lethal Exterminator Inc.,* 549 Pa. 200, 213, 701 A.2d 156, 162 (1997). (footnote omitted)

In considering whether a forum is vexatious or oppressive to a defendant, the *Cheeseman* court directed trial courts that residency of the plaintiff is not a factor in that consideration. "Residency is irrelevant." *Id.* at n.6. Furthermore, the *Cheeseman* decision noted that a trial court may not consider its own "private and public factors," such as docket congestion and convenience to the court since "[t]he convenience to the court is not mentioned in Rule 1006(d)(1) and is not an appropriate consideration for a Rule 1006(d)(1) inquiry." *Id.* at 161.

As for defendants who contend a plaintiff's forum is vexatious or oppressive pursuant to *Cheeseman,* the Superior Court has emphasized that a mere finding of inconvenience is not sufficient to warrant a transfer of venue. Claims by a defendant that no significant aspect of a case involves the chosen forum, and that another forum would be more convenient, are not the type of record evidence that proves that litigating the case in the chosen forum is oppressive or vexatious. *There is a vast difference between a finding of inconvenience and one of oppressiveness. Borger v. Murphy,* 797 A.2d 309, 312 (Pa. Super. 2002).

In the present matter, the defendant has failed to convince this court that the current venue would be oppressive or vexatious to itself or to the third-party defendants pursuant to doctrine of forum non conveniens under a *Cheeseman* analysis. Furthermore, the court finds no reason to believe that the plaintiff's choice of venue is harassing in any way to the two defendant parties, nor would venue in Cambria County be a hardship to either the defendant or the third-party defendants. In fact, the reasons indicated by the defendant to support a transfer of venue to Allegheny County cannot be considered by this court under the very stringent standard set forth in *Cheeseman* and its progeny. The fact alone that the defendant and the third-party defendants reside in Allegheny County, and are approximately an hour and a half away from the Cambria County Courthouse, is insufficient to show that this venue is oppressive and vexatious. Furthermore, the defendant has failed to specifically state the hardships that will befall it, the third-party

defendants, and their respective witnesses, should venue remain in Cambria County. This court cannot justify a transfer of venue based on generalizations alone. It is also irrelevant under a *Cheeseman* analysis that the situs of the trust account is in Allegheny County, and that the facts surrounding the administration and distribution of the trust occurred in Allegheny County, or that a majority of the fact witnesses reside in the said county. These said allegations may be correct, but as stated, they do not demonstrate to this court that this venue is vexatious or oppressive to either defendant. In fact, the *Cheeseman* decision (upon which the defendant relies) reversed a trial court's transfer of venue to another county, where the county the case was transferred to had far more contacts to that matter than Allegheny County does in the present matter.[2] Finally, while this court cannot maintain venue in Cambria County only because the plaintiff is based here, the court notes that the money in question originated in Cambria County due to a transaction that occurred in Cambria County, and that there are other suits involving the plaintiff and the third-party defendant in this county.

The defendant has referenced this court to the decision of *Borger v. Murphy*, 797 A.2d 309, (Pa. Super. 2002), which it contends held that oppressiveness of the

---

2. In *Cheeseman*, the court reversed the transfer of litigation from Philadelphia County to Bucks County even though all of the parties, fact witnesses and treating physicians resided in Bucks County and none of the tortuous acts occurred in Philadelphia County. *Cheeseman v. Lethal Exterminator Inc.*, 549 Pa. 200, 213, 701 A.2d 156, 162 (1997).

time to travel by a defendant doctor and witnesses for an 80-mile commute, and the time spent away from the doctor's office was sufficiently detailed to support a transfer. The defendant's summary of *Borger* is correct, but its legal applicability to this matter is not. In *Borger,* the defendant doctor in a medical practice case essentially argued that he would have to close his medical practice in Lehigh County should the trial proceed in Philadelphia County. Furthermore, all of the doctor's witnesses were in Lehigh County, and that the 80-mile commute to Philadelphia would be over an hour and a half compared to 20 minutes to the Lehigh County Courthouse. A co-defendant doctor testified that his commute would be over two hours. The Superior Court agreed with the trial court's decision based on the *detailed* evidence presented to it by the defendant doctor, to transfer venue to Lehigh County, noting that venue in Philadelphia County was not "merely inconvenient, but was so oppressive as to require transfer of venue." *Borger,* 797 A.2d at 312-13.

*Borger* is distinguishable to the present matter, because under a *Cheeseman* analysis, the defendant doctors presented enough sufficient and detailed evidence to convince the trial court and the Superior Court that venue in Philadelphia County would be both vexatious and oppressive, to them. In the present matter, the defendant has failed to present little, if any, information that venue in Cambria County would be vexatious or oppressive, as was the case in *Borger.* Granted, the defendant's witnesses and counsel may reside in Allegheny County, about an hour and a half away from the Cambria County Courthouse, but the defendant has not specifically indicated

how this distance would meet the vexatious or oppressive standard of *Cheeseman*. This court has been presented with no evidence as to how the defendant's witnesses' lives and families would be disrupted, how their witnesses' jobs would be at stake, or, as was the possibility in *Borger,* that the defendant Mellon Bank would have to close its doors and cease operations should this case proceed in Cambria County. Similarly, this court has not been presented with specific, detailed evidence from the third-party defendants that this venue is oppressive or vexatious pursuant to *Borger.* The third-party defendants' failure to appear at the October 1, 2003 hearing is not sufficient to meet that threshold.

The appellate courts have made it abundantly clear, and have consistently held, that in order to grant a transfer of venue pursuant to the *Cheeseman* decision, the trial court must be presented with specific detailed evidence of how the present venue would be oppressive or vexatious to the party seeking a transfer. In *Hoose v. Jefferson Home Health Care Inc.,* 754 A.2d 1, 5 (Pa. Super. 2000), the Superior Court reversed a trial court's transfer where a defendant health insurer failed to produce any affidavits attesting to the fact that they would suffer unnecessary hardships in the plaintiff's chosen venue. The court noted the defendant "broadly states that various witnesses will suffer hardship by traveling" to the chosen forum, and held: "we stress that there is a vast difference between a finding of inconvenience and one of oppressiveness. It is the former that we believe has been alleged and shown today; *without more,* we must reverse." *Hoose,* 754 A.2d at 5. (emphasis added) See

also, *Johns v. First Union Corporation,* 777 A.2d 489 (Pa. Super. 2001), for a similar holding.

This court also takes note of Judge Nealon's decision in *Shala v. Ryan,* 53 D.&C.4th 129 (Lacka. Cty. 2001), in which he wrote that "[i]n the wake of *Cheeseman,* the Superior Court has vacated several lower court holdings by concluding that the petitioners failed to demonstrate the level of oppressiveness necessary to warrant a transfer of venue." *Id.* at 137. Further, "there is only one reported case in which an appellate court has upheld a transfer of venue based upon the *Cheeseman* standard." *Id.* at 138.[3] In *Shala,* Judge Nealon denied a venue transfer request where the defendants had an hour and a half commute to the Lackawanna Courthouse, and where the defendants failed to identify the witnesses who would suffer should venue remain in Lackawanna County. *Id.*

The case referenced in *Shala* is *Dulaney v. Consolidated Rail Corporation,* 715 A.2d 1217 (Pa. Super. 1998), a case also referenced by the defendant in the present matter. In *Dulaney,* the Superior Court held that the trial court did not abuse its discretion in transferring an ac-

---

3. The court has found an additional reported case since the *Shala* decision, that being *Mateu v. Stout,* 819 A.2d 563 (Pa. Super. 2003), where the Superior Court affirmed a transfer of venue pursuant to *Cheeseman,* where the trial court concluded that the plaintiff's venue in a personal injury matter would be oppressive to the defendant parties, where all parties, witnesses, and even the accident had no connection to the plaintiff's forum. Unlike the present matter where this court was presented with general references to geographic location and no specific allegations of oppressiveness or vexatiousness as to the current venue, the trial court in *Mateu* was presented with detailed information to conclude that a hardship would befall the parties should venue remain in the original forum.

tion from Philadelphia County to Allegheny County since the accident occurred in Ohio, the plaintiff, his medical providers and all of the witnesses resided in Ohio, West Virginia or western Pennsylvania, and the plaintiff worked out of the defendant's Allegheny County office. *Dulaney, supra.* Again, and unlike the parties in *Dulaney,* the defendant has offered this court nothing more than general allegations of geographical inconvenience, which do not warrant a transfer pursuant to *Cheeseman.* Furthermore, the distance to travel in the present matter is a fraction of the distance to be traveled by *all* of the *Dulaney* parties, which were faced with the prospect of traveling to a distant venue which had absolutely no relation to the litigated issues and the witnesses to testify.

## CONCLUSION

In summary, the court can find no reason to transfer venue to Allegheny County pursuant to the doctrine of forum non conveniens as interpreted by the *Cheeseman* decision. While the defendant has informed the court that it and the third-party defendants are located in Allegheny County, as are their witnesses, and the trust account involving the funds in dispute, the defendant has failed to provide sufficient and detailed evidence to this court to show how this forum is vexatious, oppressive or even harassing to the respective parties. While this forum may be inconvenient to the defendant and the third-party defendants, mere inconvenience is not enough to meet the stringent standards set forth in *Cheeseman* to warrant a transfer of venue under the doctrine of forum non conveniens. As such, the defendant's petition is denied.

Accordingly the following order is entered:

ORDER

And now, October 24, 2003, it is hereby ordered and decreed that defendant's petition to transfer venue pursuant to the doctrine of forum non conveniens is dismissed.