J-A30006-15, J-A30017-15

2015 PA Super 274

| STEPHANIE FESSLER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., AND CHRISTIAN CONGREGATION OF JEHOVAH'S WITNESSES, INC. AND SPRING GROVE CONGREGATION OF JEHOVAH'S WITNESSES, INC. AND TERRY JEANNE MONHEIM, | |
| Appellees | No. 106 EDA 2015 |

Appeal from the Order November 17, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): SEPTEMBER TERM, 2013, NO. 01293

_____

| COREY SCOTT, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| RENEE MENNA & WAWA, INC. D/B/A WAWA | |
| Appellee | No. 820 EDA 2015 |

Appeal from the Order March 5, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): DECEMBER TERM, 2013, NO. 02055

BEFORE:  MUNDY, J., JENKINS, J., and FITZGERALD, J.[*]

_____

[*] Former Justice specially assigned to the Superior Court.

OPINION BY JENKINS, J.:                                    **FILED DECEMBER 30, 2015**

These consolidated appeals[1] involve the same issue: whether the trial court in these civil actions abused its discretion by ordering transfer of venue from Philadelphia County to another county under the doctrine of *forum non conveniens*.

We hold that the trial court abused its discretion in both **Fessler** and **Scott** by granting the defendants' motions to transfer venue to York County and Chester County, respectively, on the basis of *forum non conveniens.* Our Supreme Court has made clear that courts should not transfer venue on the basis of *forum non conveniens* unless the defendant demonstrates that trial in the plaintiff's chosen forum would be oppressive to the defendant. In both **Fessler** and **Scott**, trial in Philadelphia would be, at most, merely inconvenient to the defendants instead of oppressive.

### *Fessler*

Stephanie Fessler alleges that between ages 14-16, she was sexually abused by Terry Monheim, a middle-aged woman that she met through the Spring Grove Congregation of Jehovah's Witnesses ("Spring Grove"). The misconduct allegedly took place either in York County, where the Spring

_____

[1] Pursuant to Pa.R.A.P. 503, we consolidate these appeals because they involve the same issue. We refer to **Fessler v. Watchtower, et al.** as "**Fessler**" and to **Scott v. Menna** as "**Scott**".

- 2 -

Grove Congregation is situated, or in Maryland, where Monheim lived, less than a half hour from the York County courthouse.

On September 11, 2013, Fessler commenced a civil action via writ of summons in the Court of Common Pleas of Philadelphia County against Watchtower Bible And Tract Society of New York, Inc. ("Watchtower"), Christian Congregation Of Jehovah's Witnesses, Inc. ("CCJW"), Spring Grove[2] and Monheim. The writ of summons listed Watchtower's and CCJW's address as Patterson, New York. On February 18, 2014, Fessler filed a complaint alleging that venue was proper in Philadelphia County because Watchtower and CCJW regularly conduct business in Philadelphia. The court overruled the Congregations' preliminary objections alleging improper venue and scheduled trial in Philadelphia for December 1, 2014.

On October 9, 2014, following the close of discovery, the Congregations filed a Rule 1006(d)(1) motion requesting a transfer of venue to York County on the ground that trial in Philadelphia would be oppressive. The Congregations presented evidence that Fessler and Fessler's parents, who all expected to testify at trial, reside in York County. The Congregations did not, however, offer evidence that traveling to Philadelphia would be oppressive to these witnesses. The Congregations also submitted affidavits

---

[2] We will refer to Watchtower, CCJW and Spring Grove collectively as "the Congregations".

from four church representatives who averred that (1) they lived in York County or Maryland, more than 100 miles from Philadelphia,[3] (2) they gave depositions and expected to testify during trial, (3) they would have to attend one or more days of trial, and (4) they would miss at least one workday for every day they spent in Philadelphia. Further, the Congregations attached Internet records indicating that Fessler's former therapist, an expected witness, works in York County. Lastly, the Congregations asserted, upon information and belief, that family members of the alleged abuser, Monheim, were expected to testify, and that they lived in Maryland, less than thirty minutes from the York County courthouse.

Fessler opposed the Congregations' motion to transfer, claiming that York County has the largest backlog of any county in Pennsylvania, so transfer to York County would be oppressive to Fessler. Fessler also assailed the Congregations for waiting until after completion of discovery before moving for transfer of venue, because it deprived Fessler of the opportunity to conduct discovery on the alleged oppressiveness to defense witnesses.

---

[3] The four church representatives averred the following: Troy Ruhlman averred that he lives 130 miles from downtown Philadelphia but only 20 miles from the York County courthouse. Neal Cluck averred that he lives 120 miles from downtown Philadelphia but less than 12 miles from the York County courthouse. Eric Hoffman averred that he lives over 100 miles from downtown Philadelphia but only ten miles from the York County courthouse. Gary Neal averred that he lives over 100 miles from downtown Philadelphia but only 21 miles from the York County courthouse.

In addition, Fessler argued that the Congregations expected to call four witnesses[4] for whom Philadelphia was more convenient than York County. Three of these witnesses, Fessler noted, live in Patterson, New York, which is 156 miles from Philadelphia but 265 miles from York County. The fourth witness, Hollingsworth, lived in Toms River, New Jersey, 61 miles from Philadelphia but 164 miles from York County. The Congregations responded that only two of these four witnesses are listed as witnesses in the Congregations' pretrial memorandum, and none of these witnesses submitted affidavits averring that trial in York County would be inconvenient for them.

On November 13, 2014, the Philadelphia court entered an order transferring venue to York County. Fessler filed a timely appeal from this order, and both Fessler and the Philadelphia court complied with Pa.R.A.P. 1925.

### ***Scott***

On December 16, 2013, Corey Scott, then a Chester County resident, filed a complaint in the Court of Common Pleas of Philadelphia County against Renee Menna, a Chester County resident, and Wawa, Inc. ("WaWa") for personal injuries allegedly sustained in an automobile accident in a Wawa parking lot in Chester County. Scott filed his action in Philadelphia on the

---

[4] Richard Moake, Eric Sandoval, Thomas Jefferson, Jr., and Don Hollingsworth.

ground that Wawa has an agent for service of process in Philadelphia and regularly conducts business in Philadelphia by operating five Wawa stores (none of which were related to Scott's accident). Neither Menna nor WaWa filed preliminary objections alleging improper venue.

On April 23, 2015, Scott entered into a monetary settlement with Wawa and discontinued his action against Wawa. On February 5, 2015, Menna, the lone remaining defendant, filed a motion to transfer venue to Chester County under the doctrine of *forum non conveniens*. Menna asserted that trial in Philadelphia would be oppressive because she and Scott resided in Chester County at the time of the accident,[5] the accident took place in Chester County, Scott's healthcare providers' offices are in Chester County, and Wawa, the only Philadelphia defendant, has been dismissed from the case.

On March 2, 2015, the Philadelphia court entered an order transferring venue to Chester County. Scott filed a timely appeal from this order, and the Philadelphia court filed an opinion without requiring Scott to comply with Pa.R.A.P. 1925.

### Relevant *Forum Non Conveniens* Standards

Both of these interlocutory appeals involve the same issue: whether the Philadelphia court properly exercised its discretion in granting a motion

---

[5] Scott moved to Philadelphia in November 2014.

to transfer venue to another county under the doctrine of *forum non conveniens*. We have jurisdiction over both appeals pursuant to Pa.R.A.P. 311(c), which permits an appeal as of right from an order in a civil action changing venue.

Plaintiffs "have long been provided with the initial choice of the court in which to bring an action, if that court has jurisdiction." ***Bratic v. Rubendall***, 99 A.3d 1, 6 (Pa.2014). "This practice derives from the notion of convenience to the plaintiff, not from the desire to pursue verdicts in counties perceived to be more plaintiff-friendly." ***Id***. "While a plaintiff need not provide reasons for selecting one venue over another, the doctrine of *forum non conveniens* is a necessary counterbalance to [e]nsure fairness and practicality." ***Id***.

In cases where venue is proper[6] in the plaintiff's chosen county, Pa.R.Civ.P. 1006 provides a mechanism for seeking a transfer of venue to another county on the basis of *forum non conveniens*. Rule 1006(d)(1)

_____

[6] As stated above, the trial court in **Fessler** overruled the defendants' objections to venue. The Rules of Appellate Procedure provide that when the trial court sustains venue, an appeal may be taken as of right from this order when (1) the plaintiff files an election to deem the order final within ten days after the order, or (2) the court states in the order that a "substantial" venue issue exists. Pa.R.A.P. 311(b). Otherwise, an objection to venue "may be raised on any subsequent appeal in the matter from a determination on the merits." Pa.R.A.P. 311(g)(1)(i), (2).

The plaintiff in **Fessler** did not file an election deeming the order final; nor did the trial court state in its order that a substantial venue issue exists. Therefore, the venue issue in **Fessler** is not before us in this appeal.

provides: "For the convenience of parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could originally have been brought."

The two seminal decisions on the subject of *forum non conveniens* are ***Cheeseman v. Lethal Exterminator, Inc.***, 701 A.2d 156 (1997), and ***Bratic, supra***. ***Cheeseman*** involved consolidated appeals of two tort actions (a motor vehicle accident case and a medical malpractice case) in which the Court of Common Pleas of Philadelphia County ordered transfer of venue to Bucks County on the basis of *forum non conveniens*. Our Supreme Court held in ***Cheeseman*** that the plaintiff's choice of forum deserves "weighty consideration", and therefore the party seeking a change of venue bears the burden of "demonstrat[ing], with detailed information on the record, that the plaintiff's chosen forum is oppressive or vexatious to the defendant." ***Id***. at 162. For example,

> the defendant may meet its burden of showing that the plaintiff's choice of forum is vexatious to him by establishing ... the plaintiff's choice of forum was designed to harass the defendant, even at some inconvenience to the plaintiff himself. Alternatively, the defendant may meet his burden by establishing ... trial in the chosen forum is oppressive to him; for instance, that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute. But, we stress that the defendant must show more than that the chosen forum is merely inconvenient to him.

*Id*.  In a footnote, the Court added: "A transfer petition should not be a tool by which a defendant may forestall litigation in the underlying case by generating litigation concerning the transfer petition."  *Id*. at 162 n. 8.

The Court held that the orders to transfer the actions to Bucks County constituted an abuse of discretion, because the trial court

> improperly focused its decision on the balance between the convenience of the alternate forum for both of the parties, when weighed against the court's administrative interest in clearing its backlog.  The trial court failed to hold the defendants to their proper burdens of establishing, through detailed information in the record, that the plaintiffs' choice of forum is oppressive or vexatious to the defendant.

*Id*.

More recently, in **Bratic**, our Supreme Court granted allowance of appeal to further "clarify the requirements for transfers based on *forum non conveniens* as expressed in **Cheeseman**."  **Bratic**, 99 A.3d at 6.  **Bratic** "reaffirm[ed] the **Cheeseman** standard" but held that "the showing of oppression needed for a judge to exercise discretion in favor of granting a *forum non conveniens* motion is not as severe as suggested by the Superior Court's post-**Cheeseman** cases."  **Bratic**, at 10.  While "mere inconvenience remains insufficient," **Bratic** said, "there is no burden to show near-draconian consequences."  *Id*. at 10.

**Bratic** instructs that consideration of the totality of circumstances is critical to the proper resolution of a *forum non conveniens* question.  No single factor is dispositive.  For example, the distance between the plaintiff's

chosen forum and the defendant's desired forum "alone is not dispositive, but it is inherently part of the equation …" *Id*., 99 A.3d at 9. The interference that trial in a distant forum will cause to the personal and professional lives of parties, witnesses and counsel is also relevant, but not determinative. *Id*. The possibility of oppressiveness grows, however, with each passing mile that witnesses must travel to reach the courthouse: "As between Philadelphia and adjoining Bucks County … we speak of mere inconvenience; as between Philadelphia and counties 100 miles away, simple inconvenience fades in the mirror and we near oppressiveness with every milepost of the turnpike and Schuylkill Expressway." *Id*. at 10. Another factor, the plaintiff's residency, is "peripheral to the issue and insufficient to warrant transfer"; nevertheless, "it is not error" for a trial court "to reflect upon" whether "residence is probative of oppressiveness … so long as it is not the sole reason for the judge's decision." *Id*. at 8. In addition, "public interest" factors affecting the court's own concerns, such as docket congestion, are "not controlling," because Rule 1006(d)(1) "speaks only in terms of convenience to the parties and witnesses, not the courts." *Id*. at 7, 8. But while congestion is not by itself decisive, it can still be relevant to a finding of oppressiveness:

> This is not to say court congestion is never a consideration — access to justice is certainly a significant concern of our judicial system, which means not only the ability to get into court, but to have the court expeditiously address the matter — but congestion is not sufficient in itself to justify a change of venue. Ergo, if efficient resolution is precluded by uniquely disruptive

court volume, it cannot be impermissible for the court to so note, but only insofar as it bears on the ultimate consideration of venue as oppressive or vexatious. That is, *if the congestion contributes to the oppressiveness of the chosen venue, it may be considered, though we reiterate it is not a factor sufficient by itself to warrant transfer* …

*Id*. at 8 (emphasis added).

When ruling on a Rule 1006(d)(1) motion, trial courts are vested with "considerable discretion ... to balance the arguments of the parties, consider the level of prior court involvement, and consider whether the forum was designed to harass the defendant." ***Bratic***, 99 A.3d at 7. Accordingly, appellate courts review a trial court's ruling on a motion to transfer for an abuse of discretion. ***Id***. In this regard,

> the trial court's ruling must be reasonable in light of the peculiar facts. If there exists any proper basis for the trial court's decision to transfer venue, the decision must stand. An abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence o[f] the record.

*Id*. (internal citations omitted). We must affirm a decision to transfer "[i]f there exists any proper basis for the trial court's decision[.]" ***Id***. at 8. "[S]tringent examination in isolation of each individual fact mentioned by the trial court [is] inconsistent with the applicable standard of review." ***Id***.

***Bratic's*** application of these standards deserves close attention. Rubendall, a Dauphin County attorney, represented two corporations in a Dauphin County lawsuit against Bratic for tortious interference with contract.

The trial court granted Bratic's motion for summary judgment. Bratic then sued Rubendall and the corporations (collectively "Rubendall") in Philadelphia County, alleging that the Dauphin County lawsuit constituted wrongful use of civil proceedings and abuse of process. Rubendall filed preliminary objections to Bratic's amended complaint, and in a separate motion, Rubendall moved to transfer the case to Dauphin County based on *forum non conveniens,* arguing that the pertinent witnesses and evidence were in Dauphin County, making depositions and trial in Philadelphia oppressive for Rubendall and defense witnesses. Rubendall submitted affidavits of seven witnesses, all of whom lived over 100 miles from Philadelphia, stating that depositions and trial in Philadelphia "would be both disruptive and a personal and financial hardship if [the witnesses] should be called to testify," because they "would have to incur substantial costs for fuel, tolls and, if traveling overnight, for lodging and meals[, and for] every day of deposition or trial in Philadelphia, [they] would be forced to take at least one full day away from [work]." **Bratic**, 99 A.3d at 3-4.

The trial court granted Rubendall's motion to transfer venue on the ground of *forum non conveniens.*[7] This Court, sitting *en banc*, reversed. Our Supreme Court granted *allocatur* and held that the trial court acted

---

[7] Rubendall also filed preliminary objections claiming improper venue, but the trial court did not explicitly rule on the preliminary objections. **Bratic v. Rubendall**, 43 A.3d 497, 499 n. 1 (Pa.Super.2012) (en banc).

within its discretion by granting Rubendall's motion for transfer to Dauphin County based on the totality of the evidence. *Bratic*, at 99 A.3d at 8. The Supreme Court reasoned that "if we consider only [Rubendall's] seven affidavits, there exists a proper basis for the transfer." *Id*. at 9 (citation omitted). The Court explained:

> The Superior Court noted six of the seven affidavits contained identical language, which [Bratic] argue[s] were 'plainly inadequate' because they failed to include 'details of how the affiant's "duties" or business would be affected by trial in Philadelphia, a[ ] claim that [Rubendall's] businesses would be seriously hampered or that the affiant's job would be at stake, or an[ ] averment that the affiant would not be reimbursed for expenses he incurred in traveling to Philadelphia[.]' … We are unsure what extra detail must be enumerated — the interference with one's business and personal life caused by the participatory demands of a distant lawsuit is patent. The witnesses need not detail what clients or tasks will be postponed or opportunities lost in order for the judge to exercise common sense in evaluating their worth; indeed, no one can foretell such detail. One hopes a judge may comprehend the existence of relevant general disruption from the allegations in the affidavit, sufficiently to rule on the issue.

*Id*. Although the distance between Philadelphia and Dauphin County alone was not dispositive, it plainly was relevant, because

> one needs no detailed affidavit to understand the difference in logistics necessitated by a separation of 100 miles. It is not necessary to articulate to a jurist the inherently empirical concept that distance and expedience are inversely proportional. The Superior Court speculated upon the eight witnesses, be they employees or professionals, and the economic consequences as to each is not of record, but it may be presumed without fear of contradiction that to each of these people, time indeed is money, and days of participating in trial in Philadelphia would impact their 'duties/operations[.]'

*Id*.

- 13 -

Subsequent to **Bratic**, this Court has issued one published opinion pertaining to *forum non conveniens*. **See Lee v. Thrower**, 102 A.3d 1018 (Pa.Super.2014). In **Thrower**, the plaintiff filed a personal injury action in Philadelphia County based on a motor vehicle accident on the campus of Penn State University in Centre County. Before the pleading stage concluded, the defendants filed a motion to transfer venue to Centre County on the basis of *forum non conveniens*. The trial court granted the defendants' motion to transfer, and this Court affirmed, reasoning:

> [The defendants] submitted affidavits from seven witnesses to demonstrate how trial in Philadelphia County would be oppressive. Many of the witnesses note that they have family and childcare commitments that would make a multi-day trial in Philadelphia oppressive to them. Furthermore, some potential witnesses have job responsibilities that would be impossible to perform if they were required to spend several days and nights away from Centre County. For example, Steven Maruszewski, who oversees a staff of 1300 employees at the Office of the Physical Plant at Penn State, would be required to miss multiple days of work. Several witnesses also detailed personal obligations, such as childcare, that would make a multi-day trip burdensome and disruptive.

**Id**., 102 A.3d at 1023. We observed that although "travel considerations for witnesses and transportation considerations for evidence are generally less of a concern when a Philadelphia trial court is faced with a motion to transfer venue to an adjacent suburban Philadelphia county," it is also true that

> travel beyond these counties … *can* be onerous … [T]ravel to and from State College, Pennsylvania, could take three or four hours each way. This distance, combined with the number of witnesses in this case (there being multiple defendants, most of whom are based in Centre County), would result in an oppressive situation for [the defendants].

- 14 -

*Id*. (emphasis in original).

## Discussion

Guided by these decisions, we first address the trial court's decision in *Fessler* to grant the defendants' motion to transfer venue from Philadelphia to York County. The Congregations submitted affidavits from four defense witnesses from York County asserting that trial in Philadelphia would be oppressive for them, because they live more than 100 miles from downtown Philadelphia, would miss at least one day of work if they had to testify in Philadelphia, and would miss more worktime if they had to stay overnight in Philadelphia before testifying. At first glance, this strategy seems identical to the strategy that the defendants in *Bratic* and *Thrower* used successfully. Upon closer inspection, however, the present case differs from *Bratic* and *Thrower* in several important respects, and the trial court failed to give appropriate weight to these distinctions.

The defendants in *Bratic* and *Thrower* filed motions to transfer venue, supported by affidavits, during the pleadings stage of the case, before commencement of depositions. The prompt filing of the defense witnesses' affidavits bolstered the credibility of their claims that trial in Philadelphia would be oppressive. Further, the plaintiffs in *Bratic* and *Thrower* failed to counter the defendants' motions with evidence that trial outside of Philadelphia would be more oppressive than trial in Philadelphia.

Here, in contrast, the Congregations delayed filing their motion to transfer and supporting affidavits from four witnesses until the eve of trial -- after the witnesses had appeared without objection for their depositions in Montgomery County, just twenty miles from Center City Philadelphia. Moreover, the Congregations asked the trial court to transfer venue to York County, which, as the plaintiff pointed out, has the largest civil case backlog in Pennsylvania. Transfer to York County could significantly delay trial, a troubling possibility given that trial was scheduled to begin in Philadelphia just two weeks after the court granted the Congregations' motion for transfer. Finally, the plaintiff showed that trial in York County would be more oppressive to defense witnesses from New Jersey who lived approximately 100 miles further from York County than from Philadelphia.[8] Although the trial court determined that trial would be more convenient for witnesses in York County than in Philadelphia, Trial Court Opinion at 2, 3, it failed to take into account the greater inconvenience that York County poses for the New Jersey defense witnesses.

The facts strongly suggest that the motion to transfer venue was the product of bad-faith collaboration between the Congregations and the four

---

[8] The Congregations contend that there is no proof that its New Jersey witnesses will suffer oppression because they did not submit affidavits alleging oppression. It stands to reason, however, that these witnesses will suffer oppression, because the distance to York County from their New Jersey residences is about 100 miles more than to Philadelphia.

- 16 -

York County witnesses. The willingness of the York County witnesses to testify in Montgomery County shows that they will not suffer oppression by traveling twenty additional miles to Philadelphia for trial. The Congregations' motion for transfer was not to avoid oppression - indeed, trial in York County will oppress their own New Jersey witnesses - but was a last-minute gambit to delay trial.

In the final analysis, the Congregations have used their transfer petition as "a tool [to] forestall litigation in the underlying case by generating litigation concerning the transfer petition," the abusive tactic warned against in *Cheeseman*. *Id*. at 162 n. 8. We conclude that the trial court abused its discretion by transferring venue from Philadelphia to York County.

We turn to *Scott*, which, as detailed above, is a personal injury action arising out of a motor vehicle accident in Chester County. The plaintiff and defendant Menna resided in Chester County at the time of the accident. The other defendant, WaWa, regularly conducts business and accepts service of process in Philadelphia, but WaWa was dismissed from the case via settlement. Following this settlement, the trial court granted Menna's motion to transfer the case to Chester County on the basis of *forum non conveniens*.

These facts are similar to the evidence in ***Zappala v. James Lewis Group ("Zappala II")***, 982 A.2d 512 (Pa.Super.2009). There, the plaintiff,

a Delaware County resident, filed a personal injury action in Philadelphia following an accident at a Chester County construction site. The plaintiff named multiple Chester County and Philadelphia parties as defendants. The trial court granted summary judgment to the Philadelphia parties on the ground that they had no ownership interest or other responsibility in the land where the accident occurred. The Chester County defendants moved for transfer of venue to Chester County under Rule 1006(d)(1), and the trial court granted their motion.

This Court reversed. Citing **Zappala I** and **Cheeseman**, we distinguished between "proper" forum shopping, in which the plaintiff seeks a certain forum because it is "closer to the office of plaintiff's attorney, or closer to a transportation center," and "improper" forum shopping, which occurs "when a plaintiff manufactures venue by naming and serving parties who are not proper defendants to the action for the purpose of manipulating the venue rules to create venue where it does not properly exist." **Zappala II**, 982 A.2d at 521. When the plaintiff engages in improper forum shopping, "the trial court may interfere with the plaintiff's choice of forum on *forum non conveniens* grounds." **Id**. We held:

> [W]e read **Zappala I**, in light of **Cheeseman**, to require that when, as here, the defendants that provided the basis for plaintiff's choice of forum are subsequently dismissed from the case, the remaining defendants who seek transfer pursuant to Pa.R.C.P. 1006(d)(1) have the burden of proving that the plaintiff's inclusion of the dismissed defendants in the case was **designed** to harass the remaining defendants.

- 18 -

>This burden is in keeping with the standard established by *Cheeseman*: '[T]he defendant may meet its burden of showing that the plaintiff's choice of forum is vexatious to him by establishing with facts of record that the plaintiff's choice of forum was designed to harass the defendants, even at some inconvenience to the plaintiff himself.' *Cheeseman* [], 701 A.2d at 162. *Zappala I* likewise held that a plaintiff whose *strategy* was to name *inappropriate* defendants for the purpose of establishing venue in a chosen forum are open to a challenge to the forum pursuant to 1006(d)(1): '... We disapprove of [improper] forum shopping and explain in detail that a defendant aggrieved by such *strategy* has recourse through ... *forum non conveniens* in accord with Rule 1006(d)(1)....' *Zappala I*, [] 909 A.2d at 1286 n. 14 (emphasis added).

*Id*. (emphasis in original). "The mere fact that the Philadelphia County Defendants were dismissed by unopposed summary judgment motions does not establish that [the plaintiff] engaged in improper forum shopping," we reasoned, for "[i]f dismissal by stipulation or unopposed summary judgment motions of the forum establishing defendants was the sole requirement for establishing improper forum shopping, the *Cheeseman* requirement of proof that the plaintiff chose a forum 'designed to harass' the defendant would be obliterated." *Id*. at 524. We concluded: "Given the total lack of an evidentiary record in this case (as required by *Cheeseman*), we are unable to review, let alone affirm, the trial court's finding that [the plaintiff] engaged in improper forum shopping by her inclusion of the Philadelphia County Defendants in her lawsuit." *Id*. at 525.

Here, as in *Zappala II*, there is no evidence of record that Scott joined the Philadelphia-based defendant, WaWa, for the sole or primary purpose of harassing Menna. To the contrary, the fact that WaWa paid Scott

a monetary settlement indicates that Scott had a good faith basis for suing WaWa and thus had a legitimate reason for selecting Philadelphia as the forum for litigation.

Moreover, it will not be an excessive burden for Menna to drive to Philadelphia for trial. Chester County is approximately 40 miles from downtown Philadelphia, only about one-third of the distance that the York County witnesses must travel in *Fessler*. Travel from Chester County is "mere[ly] inconvenien[t]" instead of oppressive. *Bratic*, 99 A.3d at 10; *see also Raymond v. Park Terrace Apartments, Inc.,* 882 A.2d 518, 521 (Pa.Super.2005) ("since the *Cheeseman* decision was filed, this Court has been reluctant to transfer cases from Philadelphia to the surrounding counties based on *forum non conveniens* …. in reality, traveling from Delaware, Bucks, Montgomery or Chester County to Philadelphia is not particularly onerous"). Thus, as in *Fessler*, the record in *Scott* does not justify transfer of venue out of Philadelphia.

Order at 106 EDA 2015 reversed and remanded for further proceedings. Order at 820 EDA 2015 reversed and case remanded for further proceedings. Jurisdiction relinquished in both cases.

Judge Mundy joins in the Opinion.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/30/2015</u>