2018 PA Super 6

| | |
|---|---|
| PAIGE MOODY AND KHALIL TOMLINSON, CO-ADMINISTRATORS OF THE ESTATE OF GIANNA TOMLINSON, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LEHIGH VALLEY HOSPITAL-CEDAR CREST, LEHIGH VALLEY HEALTH NETWORK, LVPG-EMERGENCY MEDICINE, TERESA M. ROMANO M.D., JULIE N. PHILLIPS M.D., KENNETH P. RACHWAL PA-C, REGINA L. WYERS PA-C VICTOR RODRIGUEZ, M.D., NATHAN C. HIMES M.D. ALEXANDER M. KOWAL M.D. AND MEDICAL IMAGING OF LEHIGH VALLEY, P.C., CHILDREN'S HOSPITAL OF PHILADELPHIA, SACRED HEART HOSPITAL, SACRED HEART HEALTH SYSTEMS, SACRED HEART PEDIATRICS ASSOCIATES AND ANDREW UNGER, M.D. | |
| | No. 3580 EDA 2016 |

Appeal from the Order October 5, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): May Term 2016 No. 0038

BEFORE:  BOWES, LAZARUS AND PLATT,* JJ.

OPINION BY BOWES, J.:                    **FILED JANUARY 18, 2018**

This is a wrongful death and survival action sounding in medical malpractice.  Paige Moody and Khalil Tomlinson, co-administrators of the Estate of Gianna Tomlinson, Deceased, (hereinafter "Administrators"),

_____

*  Retired Senior Judge specially assigned to the Superior Court.

appeal from the five identical October 5, 2016 orders granting the Defendant medical care providers' petitions to transfer venue from Philadelphia County to Lehigh County on forum *non conveniens* grounds.[1]  After thorough review, we reverse and remand for further proceedings consistent with this opinion.

On September 7, 2015, seventeen-month-old Gianna presented to Lehigh Valley Hospital with a history of vomiting and coughing.  She came under the care of defendant Kenneth Rachwal, PA-C, and she underwent a chest x-ray, which was interpreted by defendant Doctors Himes and/or Kowal.  Gianna was diagnosed with a respiratory infection and discharged, and her parents were directed to follow up with her pediatrician.

Three days later, Administrators followed up at defendant Sacred Heart Pediatrics.  Defendant Dr. Rodriguez diagnosed a respiratory infection.  When the symptoms persisted, Administrators returned to the pediatrician's office with Gianna on September 28, 2015, but no additional testing was conducted.  On October 1, 2016, Gianna was seen again at Lehigh Valley Hospital where she was treated by defendant PA-C Wyers and/or defendant Dr. Phillips for complaints of coughing and difficulty breathing.  They discharged the infant without conducting any further tests.  On October 4, 2016, Gianna returned to Lehigh Valley Hospital with complaints of

---

[1] An order changing venue in a civil action is interlocutory but appealable as of right.  Pa.R.A.P. 311(c).

shortness of breath, worsening cough, and decreased intake. Another chest x-ray was performed that, according to Administrators, was correctly interpreted as depicting an enlarged heart. At that point, Lehigh Valley Hospital contacted Children's Hospital of Philadelphia to arrange for transfer to that facility by helicopter. Physicians at the latter facility made specific recommendations for testing and medication in anticipation of Gianna's transfer.

Gianna was admitted to the Cardiac ICU at Children's Hospital, intubated, and placed on ECMO support.[2] On the second day of her hospitalization, while undergoing a cardiac procedure, she was administered an overdose of Versed, roughly ten times the proper dose. She died at Children's Hospital eight days later on October 12, 2015, and a full autopsy was performed at that facility.

On June 6, 2016, Administrators filed a complaint in the Philadelphia Court of Common Pleas against Lehigh Valley Hospital-Cedar Crest, Lehigh Valley Health Network, LVPG-Emergency Medicine, Teresa Romano, M.D., Julie N. Phillips, M.D., Kenneth P. Rachwal, PA-C, and Regina Wyers, PA-C (the "Lehigh Valley Hospital Defendants"); Medical Imaging of Lehigh Valley,

---

[2] ECMO stands for extracorporeal membrane oxygenation, which is a technique involving the removal of the blood, extraction of carbon dioxide, and oxygenation of the red blood cells. It is used to provide cardiac and respiratory support to a patient whose heart and lungs are incapable of sustaining life.

P.C., Nathan Himes, M.D., Alexander M. Kowal, M.D. (the "Medical Imaging Defendants"); Sacred Heart Hospital, Sacred Heart Healthcare System, Sacred Heart Pediatric Associates, Andrew Unger, M.D., and Victor Rodriguez, M.D. (the "Sacred Heart Defendants"); and the Children's Hospital of Philadelphia ("Children's Hospital"). Administrators alleged that the Lehigh County medical care providers and Children's Hospital in Philadelphia, collectively and individually, provided negligent medical treatment to Gianna. The Lehigh Valley Hospital Defendants, the Medical Imaging Defendants, and the Sacred Heart defendants (collectively the "Lehigh County Defendants") failed to recognize signs and symptoms of Gianna's cardiac abnormalities, even though they were depicted on the original radiography, thereby increasing the risk of death. While in a serious condition at Children's Hospital, the Hospital's agents administered an overdose of sedatives to Gianna, which also was alleged to have contributed to her death.

On July 19, 2016, Dr. Unger, Sacred Heart Hospital, and Sacred Heart Health System petitioned for a transfer of venue to Lehigh County based on forum *non conveniens* grounds. Dr. Unger and the Risk Manager of the Sacred Heart entities, Michele Coleman, submitted affidavits purporting to establish that a multiple week trial in Philadelphia would be oppressive. Dr. Unger averred therein that as the current director of Pediatrics and only one of two neonatologists on staff at Sacred Heart Hospital, his practice served

Lehigh County and Northampton County. He was told to anticipate a trial lasting multiple weeks. Based on "the immediacy required and unpredictable nature of neonatology care and emergencies, 24/7 coverage is required" by him and one other physician. Affidavit, Andrew Unger, M.D., 7/11/16, at ¶9. Dr. Unger averred that if he was required to attend trial in Philadelphia, "the impact on my ability to serve my patients and cover the hospital with regard to neonatology care and emergencies would be significant and oppressive." *Id*. He represented that if the case was transferred to Lehigh County, he could remain on call and respond to issues at Sacred Heart Hospital. *Id*. As one of only three pediatricians on staff, his prolonged absence would "significantly affect the operation of the pediatric office and clinic and of the pediatric department of Sacred Heart Hospital." *Id*. at ¶10. He cited the burden of travel, time away from his clinical and hospital duties, disruption to the Hospital, "and the difficulty of presenting Lehigh County witnesses and proof at the time of trial and throughout litigation will be significant and oppressive." *Id*. at ¶11. Two days later, Dr. Unger filed an affidavit of non-involvement in which he maintained that he was not involved in Gianna's care when the alleged negligence occurred, and he sought dismissal from the action.

Risk Manager Michele Coleman also averred that a multiple week trial, absences of "a large number of Sacred Heart staff and physician witnesses and parties will be significantly oppressive to the operation of the Sacred

Heart [corporate defendants] . . . which cannot easily manage absences and extended absences of critical staff in the same way that a large hospital is able to." Affidavit, Michele Coleman, 7/6/16, at ¶9. She reiterated that Dr. Unger's attendance at trial in Philadelphia for several weeks would be "significant and oppressive." *Id*. at ¶10. In sum, "the impact of distance, burden of travel, staff time away from hospital duties, disruption of the operation of Sacred Heart Hospital and Sacred Heart Health Systems, and difficulty obtaining witnesses and proof at the time of trial and throughout litigation will be significant and oppressive." *Id*. at ¶13.

On August 8, 2016, Administrators filed a response in opposition to the Sacred Heart Defendants' petition in which they argued that, due to the extensive medical care received by Gianna at Children's Hospital over a period of eight days, many witnesses were located in Philadelphia. They argued further that the sixty-mile distance from Allentown to Philadelphia was not an oppressive commute, and Dr. Unger could provide neonatology on-call coverage in the evenings upon his return. Administrators offered proof of numerous other pediatricians who could provide coverage for Dr. Unger. They also pointed out that Dr. Unger had a pending motion for dismissal due to uninvolvement.

On August 10, 2016, upon consideration of the motion to transfer venue filed by the Sacred Heart Defendants, and the responses thereto, the court issued a rule to show cause why the motion should be granted,

returnable at an argument and evidentiary proceeding on September 28, 2016. The order also advised the parties that the court would "accept affidavits or deposition evidence and upon application for good cause shown, live testimony, relevant to the question of forum *non conveniens*." Order, 8/1/16, at 1.

Thereafter, Administrators served interrogatories related to the venue issues upon the Sacred Heart defendants, and scheduled the deposition of Dr. Unger, who did not appear. When, despite several requests, Dr. Unger failed to supply dates when he was available for deposition, Administrators served him with a notice to attend the hearing. Dr. Unger did not attend due to other commitments.

On September 27, 2016, the day before the hearing, Defendant Rodriguez, M.D., who was no longer associated with Sacred Heart, the Medical Imaging Defendants, and Children's Hospital moved to join the petition to transfer venue. On the day of the hearing, the Lehigh Valley Hospital Defendants filed a separate motion to transfer venue with accompanying affidavits, and afterwards, the Medical Imaging Defendants filed affidavits from the defendant physicians and the executive director. At the close of the hearing, in response to counsel for Administrators' statement that they might need twenty days to respond to the new motion and yet unseen affidavits, the court granted them two days to respond.

On October 5, 2016, the court granted all motions to transfer venue to Lehigh County on forum *non conveniens* grounds. Administrators filed a motion for reconsideration on October 18, 2016, and a notice of appeal on November 2, 2016. Thereafter, on November 22, 2016, the court denied the motion for reconsideration as moot.

Administrators timely appealed and they raise three issues for our review:

1) Whether the trial court committed an abuse of discretion and misapplied the law in transferring venue of this action to Lehigh County on forum *non conveniens* grounds and disturbing Plaintiffs' appropriately chose venue of Philadelphia County where Plaintiffs' Complaint includes claims against a defendant located in Philadelphia County and a substantial portion of the medical care and factual circumstances at issue all occurred in Philadelphia County, including the minor-decedent's death such that key evidence and witnesses critical to Plaintiffs' proofs will be located in Philadelphia County and further by placing a burden on Plaintiffs to prove oppression to Philadelphia witnesses that does not exist under Pennsylvania law?

2) Whether the trial court committed an abuse of discretion and misapplied the law in ruling that Defendants met their heavy burden for transfer of this action to Lehigh County on forum *non conveniens* grounds and determining that Defendants sufficiently demonstrated that litigating this action in Philadelphia County would be oppressive and vexatious to the Defendants located in Lehigh County based upon bald assertions set forth in Affidavits that were refuted by the limited evidence provided as well as the travel distance from Lehigh County to Philadelphia that is insufficient to cause an excessive burden upon Defendants?

3) Whether the trial court abused its discretion in transferring venue to Lehigh County despite Defendants' refusal to engage in discovery and produce witnesses for testimony as well as limiting Plaintiffs' time for response to newly filed Motions/Joinder Motions seeking transfer of venue and affidavits in support

- 8 -

thereof, such that it deprived Plaintiffs' of a full and proper opportunity to refute Defendants' claims of oppressiveness and vexatiousness in opposing Defendants' various motions to transfer venue?

Appellants' brief at 5. We will treat the issues together as they all implicate the propriety of the transfer on forum *non conveniens* grounds.

Venue in this wrongful death/survival action sounding in medical negligence is governed by Pa.R.C.P. 1006, which provides in pertinent part that, "[e]xcept as otherwise provided by subdivision (c), a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose." Pa.R.C.P. 1006(a.1). Where, as here, "the action to enforce a joint or joint and several liability against two or more defendants includes one or more medical professional liability claims, the action shall be brought in any county in which the venue may be laid against any defendant under subdivision (a.1)." Rule 1006(c)(2). Thus, venue is proper in this medical malpractice case in both Lehigh and Philadelphia Counties, and only in those counties.[3]

_____

[3] The result is the same if we view this case as one for wrongful death and survival. In **Sunderland v. R.A. Barlow Homebuilders**, 791 A.2d 384 (Pa.Super. 2002), this Court held that the proper venue for wrongful death and survival actions is the county where the tortious act occurred. Since the tortious acts herein allegedly occurred in both Philadelphia and Lehigh counties, venue lies in both counties.

Administrators opted to bring the action in Philadelphia County where defendant Children's Hospital of Philadelphia is located, and that choice is entitled to great deference. *Cheeseman v. Lethal Exterminator, Inc.*, 701 A.2d 156, 161 (Pa. 1997); *Bratic v. Rubendall*, 99 A.3d 1 (Pa. 2014). "[A] plaintiff generally is given the choice of forum so long as the requirements of personal and subject matter jurisdiction are satisfied." *Zappala v. Brandolini Prop. Mgmt.*, 909 A.2d 1272, 1281 (Pa. 2006) ("*Zappala I*").

However, that choice is not absolute. The Sacred Heart Defendants availed themselves of the forum *non conveniens* provision of Rule 1006(d)(1), which permits "the court upon petition of any party" to "transfer an action to the appropriate court of any other county where the action could originally have been brought" "for the convenience of parties and witnesses." Pa.R.C.P. 1006(d)(1). Much later, the remaining Defendants joined in the petition, or filed new petitions, and the trial court granted the relief requested. The issue herein is whether the trial court abused its discretion in transferring the case to Lehigh County from Philadelphia County on forum *non conveniens* grounds.

The following principles govern a trial court's ruling on a petition to transfer venue for forum *non conveniens*. "The plaintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper." *Zappala v. James Lewis Group*, 982

A.2d 512, 518-519 (Pa.Super. 2009). The burden is a heavy one. As our High Court reiterated in **Bratic**, **supra** at 8, "the convenience [of the parties] or the lack thereof is not the test our case law has established: the moving party must show the chosen forum is either vexatious or oppressive." "Vexatious" in this context requires a showing of facts on the record that the plaintiff's choice of forum was intended to harass the defendant, even at some inconvenience to the plaintiff himself. **Cheeseman**, **supra** at 162. Oppressiveness requires a detailed factual showing by the defendant that the chosen forum is oppressive to him. Evidence that trial in another county would provide easier access to witnesses or other sources of proof, or to the ability to conduct a view of premises involved in the dispute are two examples of such facts. **Wood v. E.I. duPont De Nemours and Co.**, 829 A.2d 707, 712 (Pa.Super. 2003) (*en banc).* The plaintiff's choice of forum will prevail even if it is inconvenient to the defendants. In **Hoose v. Jefferson HomeHealth Care, Inc.**, 754 A.2d 1, 4 (Pa.Super. 2000), a defendant's claim that "no significant aspect of a case involves the chosen forum, and that litigating in another forum would be more convenient[,]" was not the type of record evidence that proves litigating the case in the chosen forum is oppressive or vexatious. We relied upon **Cheeseman**, **supra** at 162, in concluding that, "There is a vast difference between inconvenience and oppressiveness in this context." **Hooseman**, **supra** at 5.

Our standard of review of a trial court's decision granting or denying a transfer of venue is well-settled: it will not be disturbed absent an abuse of discretion. *Zappala I*, *supra* at 1284; *Wood*, *supra* at 709. An abuse of discretion occurs when the trial judge overrides or misapplies the law, or exercises judgment in a manifestly unreasonable manner, or renders a decision based on partiality, prejudice, bias, or ill-will. *Bratic*, *supra* at 3. The trial court's failure to hold the defendants to the proper burden in proving forum *non conveniens* constitutes an abuse of discretion. *See* *Catagnus v. Allstate Ins. Co.*, 864 A.2d 1259, 1264 (Pa.Super. 2004).

The trial court noted that fifteen of the sixteen defendants, the only exception being Children's Hospital of Philadelphia, were based in Lehigh County. The Lehigh County Defendants submitted affidavits in support of the petitions to transfer venue.[4] In evaluating those affidavits, the trial court referenced *Bratic*, *supra* at 9, where our High Court discussed the specificity required to satisfy the requirement of a factual showing of vexatiousness or oppressiveness:

> The witnesses need not detail what clients or tasks will be postponed or opportunities lost in order for the judge to exercise common sense in evaluating their worth; indeed, no one can foretell such detail. One hopes a judge may comprehend the

---

[4] Children's Hospital of Philadelphia joined the petition filed by the Sacred Heart defendants but did not submit any documentation in support of the contention that venue in Philadelphia was vexatious or oppressive.

existence of relevant general disruption from the allegations in the affidavit, sufficiently to rule on the issue.

Trial Court Opinion, 2/15/17, at 6 (quoting **Bratic**, **supra** at 9).

The trial court examined the affidavits submitted by the Sacred Heart defendants, the parties who initially petitioned for transfer. It focused on the averments of Dr. Unger that coverage was required at all times, and that as one of two neonatologists and one of three pediatricians on staff at Sacred Heart, trial in Philadelphia would be oppressive as it would impact his ability to treat patients and affect the operation of the hospital and affiliated entities. Ms. Coleman's affidavit, as well as the affidavit of Stephen A. Lanshe, the Vice-President and General Counsel of Sacred Heart Health Care System, expressed the same concerns about coverage for absent physicians.

Administrators provided the court with evidence that the Sacred Heart website listed a third neonatologist and numerous pediatricians.[5] In addition, Administrators supplied documentary evidence, received in response to discovery, that Dr. Unger recently had been absent from Sacred Heart for a two-week vacation, and that he had taken additional time off, often one week at a time, for personal and professional activities. They offered the evidence to refute the Sacred Heart Defendants' claim that Dr.

---

[5] Ms. Coleman submitted a supplemental affidavit in which she averred that the website was in error regarding a third neonatologist. The numerous pediatricians listed on the website had staff privileges to see their patients, but did not provide coverage to the hospital.

Unger's absence would be oppressive because it would not be able to find coverage for him, resulting in a negative impact on services. The trial court expressly refused to consider such evidence, stating an unwillingness "to impede upon a defendant's personal life in such a manner." Trial Court Opinion, 2/15/17, at 17-18. The court found that "[e]vidence that Dr. Unger goes on vacation, attends to other personal or professional obligations, or travels comparable distances for reasons other than litigation expands the analysis beyond the appropriate level of inquiry." *Id*. at 18. Furthermore, the court refused to consider Dr. Unger's filing of an affidavit of non-involvement in determining whether venue was oppressive in Philadelphia, viewing it as speculation as to whether Dr. Unger would ultimately be dismissed from the lawsuit or the path litigation would take. *Id*. at 18.

The remaining Lehigh County defendants filed last minute joinders to Sacred Hearts' petition or a new petition. The court considered a number of affidavits they submitted right before the hearing or shortly thereafter. For instance, Defendant Dr. Victor Rodriguez, who at the relevant time was a pediatrician at Sacred Heart, had taken a new position as a staff pediatrician at St. Luke's Hospital in Phillipsburg, New Jersey, and as a school physician for three school districts in New Jersey. He averred that the distance from his new job in Phillipsburg to Philadelphia was approximately seventy-five to eighty miles, versus twenty miles to the Lehigh County courthouse, and that

trial conducted in Lehigh County would afford him the ability to see his patients or respond to emergencies.

The Medical Imaging Defendants joined the petition filed by Sacred Heart, and supplied affidavits from Executive Director Greg Palmieri, Defendant Dr. Alexander Kowal, and Defendant Dr. Nathan Himes. According to Mr. Palmieri, Dr. Kowal is one of two board-certified pediatric radiologists, and one of four radiologists performing pediatric imaging for the Lehigh Valley Hospital network. Dr. Himes is one of ten neuroradiologists on staff, but only one of two neuroradiologists who work the 4:00 p.m. shift, for which it is difficult to find coverage. He averred that trial in Philadelphia would negatively impact services since other Medical Imaging physicians would have to accommodate their absence. Dr. Koval also represented that he would be unable to share evening caretaking responsibilities for his four young children if he was in Philadelphia.[6] Dr. Himes merely reiterated that his absence would burden his fellow physicians who would have to cover.

Finally, the last minute motion filed by the Lehigh Valley Hospital defendants included affidavits from Dr. Teresa Romano, Dr. Phillips, PA-C Rachwal and PA-C Wyers. All alleged a similar theme: that travel to, or a prolonged stay in, Philadelphia County would be burdensome personally and

_____

[6] Dr. Kowal also acknowledged in his affidavit that he routinely travels to other Medical Imaging locations in Luzerne and Monroe Counties that are as distant, or more distant, than Philadelphia.

present staffing challenges. Dr. Romano, one of five physicians specializing in pediatric emergency medicine, stated that she works part-time to accommodate her children, one of whom has special needs and requires transportation to therapy several times each week. Affidavit, Teresa Romano, M.D., 9/27/16, at ¶11. Dr. Julie Phillips, one of two full-time pediatric emergency physicians, maintained that the time spent traveling to and from Philadelphia would impact patient access to her specialty care.

PA-C Kenneth Rachwal and PA-C Regina Wyers represented that they work night shift so that they are available to take care of their children during the day, and that, at present, they do not have substitute childcare. Both alluded to staffing challenges in covering that night shift if they were required to travel to Philadelphia daily.

The trial court framed the question as whether Philadelphia was an oppressive or vexatious forum, and concluded that, "[a]s a collective whole, the affidavits created a clear record of oppressiveness of trial in Philadelphia." Trial Court Opinion, 2/15/17, at 15. The court declined to compare the significance of claims against Children's Hospital of Philadelphia to claims against the Lehigh County defendants. However, it faulted Administrators for not identifying "a single witness that resides in or near Philadelphia which would find the transfer of this case to Lehigh County oppressive[,]" and "baldly rely[ing]" on the child's lengthy stay at Children's and the discovery from that defendant" "to assume the oppressive nature of

- 16 -

trial in Lehigh County as it relates to potential witnesses not yet identified." *Id*. at 14. The court concluded that, "The Plaintiffs expect this level of assumption to outweigh the record established by the Defendants" and found the argument "speculative." *Id*. The "overall weight" of the defendants' personal and professional hardships "compared to the bald assertions by Plaintiff that possible, potential Philadelphia witnesses may find Lehigh County oppressive, sufficiently established the basis to transfer the matter to Lehigh County." *Id*. at 15. In addition, the commuting distance of sixty-four miles, while less than the 100 miles presumed to be oppressive, when coupled with the disruption to the personal and professional lives of the individual defendants, was oppressive. The trial court found Philadelphia to be an "oppressive and vexatious forum." *Id*. at 18.

Administrators contend first that the trial court misapplied the law and abused its discretion by failing to give the proper deference to their chosen forum. The court largely dismissed the fact that a defendant and numerous witnesses, as well as documentary evidence, are located in Philadelphia. Administrators point to their legally supported negligence claims against Defendant Children's Hospital where the decedent was hospitalized for eight days, underwent cardiac studies and other testing, and where she was negligently administered an overdose of a sedative that allegedly contributed to her death, which ultimately occurred in that facility. Administrators maintain that they will rely on evidence and key witnesses located in

Philadelphia to prove negligence and causation against both Children's Hospital and the Lehigh County defendants. They posit that evidence located in Philadelphia also will prove vital to the Lehigh County Defendants in attempting to disprove their role in Gianna's death. Administrators also allege that the same level of inconvenience due to the commute results when Philadelphia witnesses must travel to Lehigh County. They argue that Children's Hospital's joinder in the petition to transfer "affirmatively establishes the lack of any oppression resulting from the distance between Lehigh County to Philadelphia as [Children's Hospital] is obviously willing to have many of its own employees/medical staff as well as counsel make the approximately 60 mile commute without any claimed oppression." Appellants' brief at 29 n.7.

According to Administrators, the trial court misapplied *Fessler v. Watchtower Bible and Tract Society of New York*, 121 A.3d 44 (Pa.Super. 2015), and erroneously placed the burden of proof upon them to prove that witnesses in Philadelphia would find Lehigh County oppressive or vexatious. In finding that they failed to adduce such proof, the trial court stated that, "Plaintiffs have not identified a single witness that resides in or near Philadelphia which would find the transfer of this case to Lehigh County oppressive." Trial Court Opinion, 2/15/17, at 14. In characterizing Administrators' claim of voluminous discovery and records emanating from Philadelphia as mere "assumption" that could not "outweigh the record

established by the Defendants," *id*., Administrators contend the trial court improperly balanced the relative convenience of Philadelphia and Lehigh County.

Furthermore, Administrators question whether the affidavits provided detailed information of oppressiveness rather than inconvenience by being required to attend trial in Philadelphia. They characterize Dr. Unger's statement that a multiple week trial would impact his ability to provide coverage at the Hospital and serve patients, which was largely parroted by Risk Manager Michele Coleman, as speculation. The allegations by Sacred Heart's general counsel that it is a smaller hospital that cannot manage the absence of critical staff is similarly deficient according to Administrators. Administrators submitted proof obtained through discovery that Dr. Unger was absent from the Hospital for a period of fourteen consecutive days in late May to June 2016, and numerous other times when he was away for a week at a time. They contend the trial court inexplicably refused to consider such evidence although it tended to refute the notion that procuring coverage for Dr. Unger would be oppressive.[7] The court, while insisting that such personal probing "expands the analysis beyond the appropriate level of

---

[7] Counsel for Administrators argued, in response to claims that Dr. Unger's absence was oppressive, that despite his two–week vacation and extended professional obligations, "And last time I checked, Sacred Heart is still operating and the NICU is still operating and they found coverage." N.T., 9/28/16, at 37.

inquiry," then turned around and placed great weight on the disruption to the personal and professional lives of the Lehigh County individual defendants due to the lack of substitute childcare and coverage. Trial Court Opinion, 2/15/17, at 18. Administrators argue that, while it is inconvenient to obtain coverage, it is not sufficient evidence of oppression to sustain the Defendants' burden to transfer. Additionally, the court ignored Administrators' argument that a trial date could be set well in advance on a date-certain to minimize inconvenience and allow planning by the defendants.

Administrators direct our attention to the numerous cases, ignored by the trial court, where our courts have held it to be an abuse of discretion to disturb a plaintiff's choice of venue even where there were no Philadelphia defendants or witnesses and no factual aspect of the case occurred there. *See Fessler*, *supra*; *Hoose*, *supra*; *Cooper v. Nationwide Mut. Ins. Co.*, 761 A.2d 162 (Pa.Super. 2000); *Walls v. The Phoenix Insurance Co.*, 979 A.2d 847 (Pa.Super. 2009); *Cheeseman*, *supra.* Administrators represent that "there has never been a precedential appellate ruling in this Commonwealth where there was an active defendant residing in [the chosen forum] . . . and where it was deemed appropriate to nonetheless transfer to another venue on forum *non conveniens* grounds." Appellants' brief at 32. *Cf*. *Bratic* (affirming transfer from Philadelphia to Dauphin County of action for abuse of process and wrongful use of civil proceedings based on earlier

tortious interference lawsuit in Dauphin County; all defendants were from Dauphin County; all of defendants' witnesses resided or worked more than 100 miles away; only connection to Philadelphia was the defendants' attenuated business relations there). They point out that the instant case is all the more remarkable as negligence giving rise to the cause of action, considerable medical care, witnesses and evidence are located in Philadelphia.

Finally, Administrators complain about the procedure herein. They point out that the Sacred Heart Defendants evaded discovery and filed two affidavits immediately prior to the hearing. The other Lehigh County Defendants waited six weeks, until the eve of the evidentiary hearing scheduled on the Sacred Heart Defendants' petition, to file joinders or new petitions. Some of the supporting affidavits were filed after the hearing. Administrators did not have copies of many of the affidavits or an opportunity to conduct discovery regarding the allegations contained therein prior to the hearing, and a mere two days thereafter to refute them. The Lehigh County Defendants counter that Administrators failed to object below, and, hence, the issue is waived.

We start from the premise that the plaintiff's choice of forum is controlling and, only then, do considerations like forum *non conveniens* come into play. As our High Court noted in **Cheeseman**, a "plaintiff's choice

of forum should rarely be disturbed by the grant of a Rule 1006(d)(1) petition." ***Cheeseman***, ***supra*** at 162.

Forum *non conveni*ens "is a necessary counterbalance to insure [sic] fairness and practicality." ***Bratic***, ***supra*** at 7 (quoting ***Okkerse v. Howe***, 556 A.2d 827, 832 (Pa. 1989)). However, the burden is on the defendant, and it has been described as a heavy burden, to "demonstrate, with detailed information on the record, that the plaintiff's chosen forum is oppressive or vexatious to the defendant." ***Cheeseman***, ***supra*** at 162.

Moreover, the term forum *non conveniens* is actually a misnomer because inconvenience is not enough reason to transfer venue. The plaintiff's choice of venue must be either vexatious, *i.e.*, intended to harass, or so oppressive as to require transfer. ***Cheeseman***, ***supra***. In ***Cheeseman***, the Supreme Court held that claims in the defendant's petition "that no significant aspect of the case involves the chosen forum, and that litigating in another forum would be more convenient . . . do not amount to a showing that the chosen forum is oppressive or vexatious." ***Id***. at 162.

Preliminarily, we find no evidence in the record that would support a finding that venue in Philadelphia County is vexatious, *i.e.*, intended to harass. Defendant Children's Hospital is located in Philadelphia. The only argument advanced by the Lehigh Defendants that even remotely implies vexatiousness in the choice of forum is their contention that liability against Children's Hospital is thin or limited to one instance of negligence that did

not cause Gianna's death. We find any implication that liability against Children's Hospital was fabricated to achieve venue in Philadelphia to be wholly without support for the following reasons.

We note that the petition to transfer was filed early in the proceedings herein. The trial court has not yet ruled on preliminary objections filed by the Lehigh Valley, Sacred Heart, and Medical Imaging Defendants, some of which were in the nature of a demurrer.[8] Nor has it considered Dr. Unger's affidavit of non-involvement. The parties have not conducted discovery on the merits. Based on the record before us, which consists largely of pleadings, Children's Hospital of Philadelphia is a viable defendant.

Furthermore, the alleged liability of Children's Hospital is not limited to the single occasion where Gianna was given an overdose of sedative, as the Lehigh County Defendants suggest. Administrators also averred that agents of Children's Hospital failed to appreciate the risk of cardiac decompensation from medication errors, to recognize that Gianna's symptoms and clinical picture included myocarditis and potential cardiac failure, and to properly treat and manage those conditions. Administrators pled that, together with

_____

[8] Although the Lehigh County defendants argue that liability against Children's Hospital is thin, we note that Children's Hospital is the only defendant that did not file preliminary objections to the Complaint. In contrast, many of the Lehigh Valley and Sacred Heart defendants have filed preliminary objections in the nature of a demurrer. It is quite possible, perhaps probable, that the number of defendants in Lehigh County will shrink after demurrers are ruled upon and dispositive motions are decided.

the negligence of the Lehigh County Defendants, the negligence of Children's Hospital caused or increased the risk of Gianna's death.

In addition, Administrators contend that many of the tests administered at that facility, as well as medical documentation of Gianna's condition upon her arrival there, is highly probative evidence in proving negligence against both the Lehigh County Defendants and Children's Hospital.  This is not a situation where Philadelphia County's involvement is incidental or tangential.  **See Bratic**, **supra** (fact that defendant occasionally did business in Philadelphia was only connection to Philadelphia).  Nothing in the record supports a finding that the filing of the case in Philadelphia was vexatious.

We find merit in the Administrators' contention that the trial court did not apply the proper legal standard in ruling on the petition to transfer.  In faulting Administrators for not introducing specific evidence of individuals in Philadelphia who would be oppressed by a trial in Lehigh County, the court missed the mark.  Administrators did not have the burden to prove that Lehigh County was oppressive to certain individuals, and such evidence was irrelevant to the inquiry herein.[9]  The trial court compounded its error by

_____

[9] In **Fessler v. Watchtower Bible**, 131 A.3d 44 (Pa.Super. 2015), this Court construed **Bratic** as requiring consideration of the totality of circumstances.  The distance between the two forums, the disruption to the
*(Footnote Continued Next Page)*

concluding that any assumption that trial against Children's Hospital of Philadelphia would involve witnesses and evidence from Philadelphia did not "outweigh the record established by the Defendants." Trial Court Opinion, 2/15/17, at 14. In concluding that "the overall weight of [the Defendants'] affidavits, compared to the bald assertion by Plaintiff that possible, potential Philadelphia witnesses may find Lehigh County oppressive, sufficiently established the basis to transfer the matter to Lehigh County[,]" *id*. at 15, the court improperly engaged in a balancing test. We rejected that approach in **Cheeseman**, **Wood**, and **Catagnus**, because it disregarded the great weight accorded to the plaintiff's initial choice of forum. Transfer on forum *non conveniens* grounds is proper only if the defendant proves that the chosen forum is oppressive to him.

In addition, despite the court's insistence that it considered the totality of the circumstances, the record refutes that representation. The court expressly refused to consider Administrators' evidence that Dr. Unger had been away from Sacred Heart Hospital for extended periods on vacations and professional commitments, professing that it was "unwilling to impede upon a defendant's personal life[,]". . . "for purposes of establishing the proper forum." *Id*. at 18.

*(Footnote Continued)* ───────────────

parties' personal and professional lives, are part of the equation, but no one factor is dispositive.

We find the evidence that the Sacred Heart defendants apparently found coverage when Dr. Unger was absent for relatively long periods for personal and professional reasons relevant to the issue of whether his attendance in Philadelphia for a multiple week trial would be oppressive.[10] The evidence was produced in response to discovery requests, and admitted without objection. The trial court cited no authority in support of its conclusion that the evidence was beyond the scope of the relevant inquiry, and we know of none.

Despite its reluctance to consider evidence of the personal life of Dr. Unger that tended to undermine the Sacred Heart defendants' claim that the chosen forum was oppressive, the trial court had no similar reservation about relying upon individual defendants' claims of personal hardship in support of it decision transfer the case to Lehigh County. The trial court placed great weight upon disruption to the personal and professional lives of the individual defendants due to a present lack of substitute childcare, the inability to share parenting responsibilities in the evening, the need to

---

[10] The affidavits filed by the Sacred Heart defendants assume that Dr. Unger would be required to stay in Philadelphia for several weeks and be unavailable for emergencies on a 24/7 basis. The majority of Lehigh County defendants would be traveling approximately 128 miles each day, admittedly far less than the 200 mile round-trip commute viewed as oppressive in **Bratic v. Rubendall**, 99 A.3d 1 (Pa. 2014). There was no explanation offered as to why Dr. Unger could not provide on call coverage in the evenings or on weekends.

transport a child to therapy several days per week, and coverage for hospital shifts. The trial court also ignored the fact that trial is two years away, and that it can be set for a date-certain that would allow the individual defendants to make alternate arrangements for short-term personal and professional commitments. In sum, we find such evidence of present inconvenience to be a factor entitled to little weight in determining oppressiveness in the future.

Finally, the trial court dismissed as speculation Administrators' common sense observation that Children's Hospital physicians, staff, and administrators would face similar personal disruption in commuting and arranging for childcare if trial was moved to Lehigh County. While we recognize that the smaller size of the Lehigh County medical entities may make it more difficult to procure coverage for physicians and staff attending trial in Philadelphia, a trial in Lehigh County still would present coverage challenges for Children's Hospital's agents and employees called to testify. The trial court was too quick to dismiss and disregard the obvious disruption to the operation of the Philadelphia defendant.

Finally, although we need not reach Administrators' contention that the procedure herein was unfair, we find merit in their complaints. The Sacred Heart Defendants filed their petition on July 18, 2016, and on August 10, 2016, the court scheduled the evidentiary hearing to allow time for discovery related to the forum *non conveniens* issue. Dr. Unger evaded being deposed

prior to the hearing. He also did not comply with a notice to attend the September 28, 2016 hearing where he could have been questioned. The remaining Lehigh County Defendants waited more than six weeks, until the eve of the evidentiary hearing, to seek leave to join the petition or file their own petition and supporting affidavits. Several of the affidavits had not been filed as of the hearing and Administrators had not seen them. Thus, Administrators had no notice of the facts and circumstances forming the basis for the latest claims that trial in Philadelphia would be oppressive, and no opportunity to engage in discovery to probe the significance of the averments contained in their affidavits.

The Lehigh County Defendants argue on appeal that since Administrators did not object and seek additional time for discovery, they waived any challenge to the procedure. The record reveals, however, that when the court asked Plaintiffs' counsel if he objected to the late-filed affidavits, counsel protested that he had yet to see the affidavits, and thus, he did not know whether he had an objection. Counsel advised the court several times that he was unable to respond to several of the motions and affidavits as they had not been filed or served upon him. Counsel suggested that, since a new motion had been filed, Administrators might need the twenty-day period conferred under the rules to respond. The court rejected that notion, characterizing the filings as "joinders," which was not entirely correct, and ordering responses by Friday, two days hence.

On these facts, we decline to find waiver. The Sacred Heart Defendants' evasion of discovery evidences a lack of good faith. The late joinders and/or late filings of petitions to transfer, together with supporting affidavits, was calculated to avoid discovery and ambush Administrators with new claims of oppressiveness and no notice or opportunity to refute them. The trial court played into Defendants' hands by ignoring the untimeliness of the joinders and petitions and the lack of reasonable notice to Administrators, and denying counsel's request for discovery and the customary twenty days to respond. We do not countenance such tactics in this Commonwealth.

In conclusion, since the trial court applied the wrong legal standard in granting the petitions to transfer venue on the basis of forum *non conveniens*, and abused its discretion in refusing to consider evidence presented by Administrators tending to refute the oppressiveness of venue in Philadelphia, we reverse and remand for further proceedings consistent herewith.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/18/18